Eddie Zavala Vázquez, demandante y recurrente, *v.* Municipio de Ponce, demandado y recurrido.

Número: CE-93-796          Resuelto: 7 de diciembre de 1995

*Francisco J. Rodríguez Juarbe*, de *Rodríguez & Busquets*, abogado de la parte recurrente; *José Edgardo Pérez Rivera*, de *Torres y Pérez Rivera*, abogado de la parte recurrida.

SENTENCIA

El peticionario, Eddie Zavala Vázquez, quien se desempeñaba en un puesto de Funcionario Administrativo V en el servicio de carrera del Municipio de Ponce, resultó electo Senador por el Partido Nuevo Progresista en las pasadas elecciones generales, representando al Distrito de Ponce en el Senado de Puerto Rico. En diciembre de 1992, y previo a cesar en sus funciones en el Municipio, solicitó del Alcalde de Ponce una licencia sin sueldo *durante el término en que estuviera ejerciendo las funciones de Senador.*

Mediante misiva fechada 29 de diciembre de 1992, el Alcalde denegó la solicitud de licencia sin sueldo, por entender que ésta era contraria al Art. III, Sec. 15 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, que prohíbe que un senador o representante ocupe un cargo en el Gobierno de Puerto Rico, sus municipios o instrumentalidades mientras se desempeña como legislador.

Inconforme con esa decisión, Zavala Vázquez presentó un escrito de apelación ante la Junta de Apelaciones del Sistema de Administración de Personal del Estado Libre Asociado de Puerto Rico (J.A.S.A.P.). En éste solicitó a dicha Junta que ordenase al Alcalde de Ponce extenderle una licencia sin sueldo por un (1) año, la cual debería ser prorrogada de año en año mientras el apelante ocupara el cargo de Senador.

El 9 de junio de 1993, J.A.S.A.P. emitió una resolución para resolver que la referida "Cláusula de Incompatibilidad de Cargos" (Art. III, Sec. 15, Const. E.L.A., *supra*) no impedía que al apelante se le otorgara una licencia sin sueldo para desempeñarse como Senador. Al así resolver, concluyó dicha Junta que un empleado al cual se le otorga una licencia sin sueldo no está ocupando el puesto del cual se encuentra en licencia. Señaló que el empleado en licen-

cia no está ejerciendo las funciones del puesto y que dicha licencia realmente sólo apareja un derecho a la reinstalación tan pronto cese la causa por la cual ésta fue concedida, por lo que no podía concluirse que se ocupaba un puesto.

El Municipio de Ponce, una vez declarada sin lugar su reconsideración ante J.A.S.A.P., acudió en revisión judicial de la aludida resolución.

El 15 de noviembre de 1993, el Tribunal Superior, Sala de Ponce, revocó la decisión de J.A.S.A.P. Determinó que la concesión de una licencia sin sueldo a Zavala Vázquez por el término por el cual éste ocupe el cargo de Senador por el Distrito Senatorial de Ponce era ilegal. Concluyó el foro sentenciador que un empleado que disfruta de una licencia sin sueldo sigue ocupando su puesto, por lo que era de aplicación al caso de autos la prohibición constitucional contenida en el Art. III, Sec. 15 de nuestra Constitución, *supra.*

Inconforme con el dictamen judicial, el peticionario acudió oportunamente ante nos, haciendo los siguientes señalamientos de error:

> Erró el Honorable Tribunal al determinar la ilegalidad de la concesión de una licencia sin sueldo a un legislador mientras ocupa el cargo al que fue electo.
> Erró el Honorable Tribunal al determinar que mientras se disfruta una licencia sin sueldo se ocupa el cargo del cual se disfruta dicha licencia.
> Erró el Tribunal al no conceder a la parte recurrente el debido proceso al no haberse cumplido con las reglas del Tribunal Supremo para el procedimiento de revisión de decisiones administrativas ante el Tribunal Superior.

El 10 de marzo de 1994 expedimos el auto solicitado.

I

Habiéndose examinado los alegatos de las partes y los otros documentos que constan en autos, y conforme las normas de derecho, así como la jurisprudencia aplicable de

este Tribunal, *se confirma la sentencia recurrida dictada por el Tribunal Superior, Sala de Ponce, el 15 de noviembre de 1993.*

Lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad, a la cual se unieron el Juez Presidente Señor Andréu García y la Juez Asociada Señora Naveira de Rodón. El Juez Asociado Señor Negrón García concurrió con una opinión escrita. El Juez Asociado Señor Corrada Del Río disintió con una opinión escrita.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión concurrente del Juez Asociado Señor Negrón García.

I

La incompatibilidad consagrada en el segundo párrafo del Art. III, Sec. 15 de nuestra Constitución, L.P.R.A., Tomo 1,([1]) diáfanamente prohíbe a todo legislador ocupar *simultáneamente* un cargo gubernamental, municipal o en sus instrumentalidades. Ante este mandato, el peticionario Eddie Zavala Vázquez, Senador electo por el Partido Nuevo Progresista (P.N.P.) por el Distrito de Ponce, está impedido de ocupar de jure la plaza de *Funcionario Admi-*

---

([1]) "Ningún Senador o Representante podrá ser nombrado, durante el término por el cual fue electo o designado, para ocupar en el Gobierno de Puerto Rico, sus municipios o instrumentalidades, cargo civil alguno creado, o mejorado en su sueldo, durante dicho término. Ninguna persona podrá ocupar un cargo en el Gobierno de Puerto Rico, sus municipios o instrumentalidades y ser al mismo tiempo Senador o Representante. Estas disposiciones no impedirán que un legislador *sea designado para desempeñar funciones ad honorem.*" (Énfasis suplido.) Art. III, Sec. 15, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 343.

*nistrativo V* en el Municipio de Ponce, aún bajo el predicado de una licencia sin sueldo.

No podemos, pues, suscribir una interpretación que reduzca esta prohibición de alta moral pública a una simple ecuación de retribución económica y reglamentaria.

> Las incompatibilidades parlamentarias o legislativas son establecidas por las normas constitucionales *con el objeto de impedir el desempeño simultáneo de la función legislativa y de ciertos cargos públicos o privados.* Esas incompatibilidades, que acarrean la consecuente obligación de tener que *optar* entre el cargo legislativo y la ocupación calificada como incompatible, son de tres clases: jurídico-positivas, materiales y éticas.
>
> Las incompatibilidades jurídico-positivas son las impuestas por una norma constitucional y se basan, esencialmente, sobre el principio o la técnica de la división de poderes. (Énfasis suplido y escolio omitido.) G. Badeni, *Inelegibilidad e Incompatibilidad Parlamentarias*, XLVII (Núm. 1) Rev. Col. Abo. Buenos Aires 1, 16 (1987).

Según surge de los alegatos de ambas partes como de la propia Sentencia de este Tribunal, es un hecho incontrovertido que el Alcalde del Municipio de Ponce, Hon. Rafael Cordero Santiago, denegó la solicitud de licencia sin sueldo al Senador Zavala Vázquez basado únicamente en la incompatibilidad constitucional. Es impostergable, pues, adjudicar dicho planteamiento. Acometamos la tarea.

## II

*Primero,* dentro del espíritu de esta incompatibilidad constitucional, el descargo de funciones *ad honorem* trasciende la sola cuestión económica.

A tal efecto, al explicar en el seno de la Convención Constituyente el significado del término "cargo civil", el Delegado Sr. Luis Negrón López aclaró que era un cargo gubernamental, que conllevaba unos *deberes* que cumplir *más una remuneración.* Delineó así el verdadero y amplio alcance de esta incompatibilidad:

... esta incompatibilidad que se declara [es], no ya con el propósito de que no se perciban dos sueldos, sino positivamente, *por la razón de que conviene evitar por mortificaciones de alta moral pública, que una persona ocupe un cargo en una rama del gobierno, recibiendo la compensación que ese cargo conlleva, y ocupe en otra rama del gobierno un cargo incompatible en sus funciones y deberes, renunciando la compensación en el segundo cargo*; con lo cual podría fundirse un cargo de legislador, que es un cargo del poder legislativo, con un cargo de secretario de gobierno, que sería un cargo en el poder ejecutivo, y podría también, ocuparse cualquier cargo en el poder judicial, renunciando la compensación del segundo cargo.

No se establece en la enmienda, a mi juicio, *no se condiciona la no compatibilidad, eliminando lo relativo a la compensación, porque no es suficiente la compensación. La compensación podría renunciarse, y en ese caso se estaría vulnerando el propósito que está consignado en el artículo 5 de este proyecto.* Lo que se señala en la enmienda es la condición de cargo *ad honorem*, que es un cargo que no conlleva remuneración. Entiendo que hay opiniones legales, al efecto de que un cargo *ad honorem* no es un cargo civil. (Énfasis suplido.) 2 Diario de Sesiones de la Convención Constituyente 781 (ed. 1961).

Más adelante, el Delegado Sr. Víctor Gutiérrez Franqui ratificó el enfoque de que "no existe semejante cosa como un 'cargo público', no remunerado. Que una de las condiciones esenciales para que pueda existir cualquier cargo público, un cargo civil en el gobierno, es que *conlleve remuneración*". (Énfasis suplido.) Diario de Sesiones, *supra*, pág. 783.

En resumen, el debate en la Asamblea Constituyente revela concluyentemente que un cargo civil es remunerado por definición. En contraste, ad honorem es aquel cargo para el cual no hay remuneración asignada. Por lo tanto, una vez la hay, la renuncia a los emolumentos no lo convierte en *ad honorem*.

*Segundo*, no puede pasarse por alto que el *beneficio* de una *licencia sin sueldo* de un funcionario municipal precisamente se origina en la *tenencia y retención* del mismo cargo; presupone que el que lo ocupa no ha renunciado. Sólo por abstracción y ficción jurídica puede negarse que

un funcionario en licencia sin sueldo no ocupa la posición. Basta recordar que su plaza sólo puede llenarse temporalmente por la entidad nominadora; no hay desvinculación total ni existe vacante.(²)

*Tercero*, en sana lógica no es posible conciliar el cargo que ocupa el Senador Zavala Vázquez con el que retendría como funcionario municipal en virtud de una *licencia sin sueldo*. La excepción constitucional sobre *"desempeñar* funciones *ad honorem"* se configura únicamente mediante el *desempeño real* de unas funciones, esto es, conlleva "cumplir las obligaciones inherentes a una profesión, cargo u oficio; *ejercerlos".*(³) (Énfasis suplido.) Durante su incumbencia en el Senado, ¿qué funciones "desempeñará" el Senador Zavala Vázquez en el Municipio de Ponce como *Funcionario Administrativo V*, mientras disfruta de la licencia sin sueldo? *Ninguna.*

*Cuarto*, no pueden aplicarse normas reglamentarias de personal, pues aquí estamos ante una incompatibilidad de *estirpe constitucional* que, según indicado, por excepción, únicamente admite que un legislador sea "designado para desempeñar funciones *ad honorem".* Art. III, Sec. 15, Const. E.L.A., *supra.*

*Quinto*, no cabe invocar *Berberena v. Echegoyen*, 128 D.P.R. 864 (1991). Allí, la concesión de licencias especiales con sueldo cubría sólo a los maestros oficialmente *nominados* para un cargo electivo. No se extendía a los *maestros electos*, los cuales, en virtud de esa propia legislación, cesaban de disfrutar la licencia especial con sueldo un día después de la celebración de las elecciones. 18 L.P.R.A. sec. 249d.

---

(²) Es errónea la conclusión del Tribunal Superior, Sala de Ponce, y la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.) de que un empleado municipal que goza una licencia sin sueldo no está "ocupando" la plaza, aún cuando reconoce que sólo puede ser llenada por nombramientos *transitorios.*

(³) *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. I, pág. 471.

Sostuvimos en nuestro disenso en *Berberena v. Echego-*
*yen,* supra, la inconstitucionalidad de esa licencia con
sueldo a los maestros por resultar un irritante privilegio y
discrimen contra los demás empleados públicos, constituir
una doble vara adjudicativa injusta, ser el esquema irra-
cional y una desigualdad intolerable.

Nuestras expresiones[4] argumentando, a modo de inte-
rrogantes, que el subsidio electoral del sueldo en nada evi-
taba que los maestros políticos pudieran acogerse a sus
licencias regulares acumuladas, *incluso sin sueldo,* difícil-
mente favorecen al recurrente Zavala Vázquez. Esas ex-
presiones están concebidas en razón del tiempo y mo-
mento, esto es, durante la campaña eleccionaria. Es ilógico
interpretar nuestro disenso como una defensa de una ley
que estimábamos, de su faz, inconstitucional.

Recapitulando, *ex proprio vigore,* la Constitución esta-
bleció una incompatibilidad *absoluta* entre ser legislador y
desempeñar un cargo municipal. No podemos ignorar su
texto, espíritu y mandato. Jamás ningún reglamento de
personal puede erosionarla, añadiéndole más excepciones.
Para preservar la alta moralidad pública de los integrantes
de la Asamblea Legislativa y ser vital para el delicado
equilibrio del sistema republicano de gobierno en que se
apuntala nuestra Constitución, el Tribunal debió así adju-
dicarlo, poniéndola en vigor.

---

[4] Dijimos:
"Si la prohibición de hacer política *dentro de las aulas* es una restricción válida
y razonable —*así lo creemos y nadie nunca la ha cuestionado*— ¿qué razón de ser,
necesidad o racionalidad tiene el relevo automático que sirve de ancla al subsidio
electoral mediante la licencia con sueldo? ¿Qué impide que los maestros, una vez
sean candidatos, continúen enseñando sin hacer política? Si, como alega la mayoría,
el problema es de conveniencia —no tienen tiempo suficiente para hacer ambas co-
sas— ¿qué evita que se acojan a las licencias regulares que tengan acumuladas,
incluso *sin* sueldo, después de agotar las primeras para dedicarse de lleno a la polí-
tica? ¿Por qué razón *forzarlos* a que cesen de enseñar? (Énfasis suplido y en el
original.) *Berberena v. Echegoyen,* 128 D.P.R. 864, 905–906 (1991), opinión disidente.

— o —

Opinión de conformidad emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se unen el Juez Presidente Señor Andréu García y la Juez Asociada Señora Naveira de Rodón.

Reiteradamente hemos resuelto que las controversias judiciales no deben resolverse sobre bases constitucionales cuando existan fundamentos de distinta índole que permitan disponer de ellas de otro modo. Esta importante norma la formulamos de manera clara y elocuente hace casi cuatro (4) décadas en *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958), y la reiteramos recientemente en *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 D.P.R. 181 (1993). En el caso de autos, el foro de instancia debió aplicar la referida norma de autolimitación judicial. Dicho foro resolvió que la prohibición que aparece en el Art. III, Sec. 15 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, impide que un legislador, que antes de ser electo era empleado municipal, obtenga una licencia sin sueldo respecto a tal empleo mientras se desempeñe en la Asamblea Legislativa. Tal dictamen no era realmente necesario para llegar a la conclusión correcta de que no procede la concesión de la licencia en cuestión.

El asunto concreto ante nos puede resolverse de manera más sencilla y eficaz que como lo hizo el foro a quo. La interrogante más elemental en este caso es la de si el legislador aludido tiene *derecho* a la licencia sin sueldo que le interesa obtener.

La respuesta a dicha interrogante es clara. Dicho legislador *no* tiene derecho a la referida licencia. Para llegar a esta conclusión, basta con examinar el Reglamento de Personal del Municipio de Ponce, que es la única fuente pertinente para dirimir concretamente este asunto. Dicho reglamento dispone que un empleado municipal obtendrá

una licencia sin sueldo para prestar servicios en otra agencia del Gobierno,

> de determinarse que la experiencia que derive el empleado le resolverá una necesidad comprobada de adiestramiento al Municipio o al servicio público.

El referido reglamento dispone también que la licencia en cuestión "se concederá por un período *no mayor de un año*, excepto que podrá prorrogarse a discreción del alcalde ...". (Énfasis suplido.)

De lo anterior se deduce claramente que el legislador recurrente no cualifica para la licencia en cuestión. Es evidente que se contempla la concesión de dicha licencia sólo para el beneficio del municipio o del servicio público. La licencia no se puede conceder para atender los intereses personales del solicitante, como ocurre en el caso de autos, en el cual el legislador la solicita sólo para asegurarse de un puesto en el municipio una vez termine su incumbencia como Senador. La licencia sólo procede si el municipio o el servicio público resuelven una *necesidad comprobada de adiestramiento* mediante la experiencia de trabajo que obtendrá el empleado al disfrutar la licencia. Tradicionalmente, lo que se contempla con medidas reglamentarias como la de marras es que el empleado solicite la licencia precisamente para obtener una experiencia formativa especial, que le provea de significativas destrezas ocupacionales nuevas de índole técnica o profesional, y de ese modo resolver una "necesidad comprobada de adiestramiento" de la agencia que la concede. No es para ocupar un cargo legislativo que propiamente se establecen tales licencias. Prueba evidente de ello es que la licencia se concede, de ordinario, *sólo por un (1) año*, cuando el término mínimo de un cargo legislativo es de *cuatro (4) años*.

Más aún, la concesión de la particular licencia que solicitó el legislador recurrente depende de un ejercicio de discreción de parte de la autoridad municipal, lo que en este caso evidentemente no ha ocurrido ni va a ocurrir. Es claro

que el Alcalde de Ponce no interesa favorecer al legislador en este asunto. Al considerar el extenso curso litigioso de esta controversia, es obvio que el alcalde no ha de ejercer la discreción que claramente le da el Reglamento de Personal del Municipio *para prorrogar la licencia sin sueldo por un período mayor de un (1) año.* Ello, de por sí, es determinante en este pleito, ya que, evidentemente, para el legislador recurrente no tiene sentido disfrutar de la licencia en cuestión si no es *durante toda su incumbencia,* que será al menos de cuatro (4) años. Sin la autorización del alcalde, el reclamo del legislador de poder disfrutar de una licencia sin sueldo todo el tiempo en que ocupe su escaño en la Legislatura, es realmente académico.

En resumen, pues, bajo las normas pertinentes que aplican específicamente al legislador recurrente, éste no tiene derecho como tal a la licencia sin sueldo que le interesa conseguir. Su situación sería distinta si, en lugar de haber ocupado un empleo municipal antes de su elección, hubiese sido, digamos, Profesor en la Universidad de Puerto Rico (U.P.R.). El Reglamento General de la U.P.R., por justificadas razones relativas a la naturaleza e historia de la institución, provee un claro derecho a licencia sin sueldo para legisladores. En su Sec. 58.2 del Art. 58, el Reglamento de la U.P.R. dispone:

> En caso de que un miembro del personal docente universitario resulte electo, o sea designado sustituto, para ocupar un cargo público electivo, *disfrutará de licencia sin sueldo durante el período de su incumbencia* .... (Énfasis suplido.) Art. 58, Sec. 58.2, Reglamento General de la Universidad de Puerto Rico, diciembre de 1990, pág. 139.

Como el Reglamento del Municipio de Ponce no provee un derecho como lo hace, por ejemplo, el de la U.P.R., el legislador, en el caso de autos, no puede prevalecer en su acción.

El análisis jurídico anterior es todo lo que se necesita para disponer expeditamente de la controversia en el caso

de autos. No es de modo alguno necesario ni aconsejable entrar en cuestiones constitucionales; no importa que las partes hayan trabado el asunto en tales términos. Conocida es la norma de que la revisión apelativa se da contra el dictamen de instancia y no contra sus fundamentos. Los tribunales, en casos de revisión como el de autos, ciertamente pueden resolver una controversia judicial apoyados en los fundamentos de derecho que sean correctos, independientemente de los que se hayan alegado o de los que haya utilizado originalmente el foro cuya decisión se revisa. *Vélez Rodríguez v. Amaro Cora*, 138 D.P.R. 182 (1995); *Collado v. E.L.A.*, 98 D.P.R. 111 (1969); *Rodríguez v. Serra*, 90 D.P.R. 776 (1964).

## II

Este caso provee un buen ejemplo de por qué no debemos adjudicar una cuestión constitucional, si existen fundamentos de otra índole que permitan disponer del pleito.

La referida norma de autolimitación judicial, como otras similares, se origina en la particularidad de la revisión judicial en nuestro sistema de gobierno. Como bien se señaló en *E.L.A. v. Aguayo*, supra, pág. 599, "[e]s punto menos que aterradora la visión de una sociedad en la cual jueces nombrados por vida tengan la facultad de juzgar la constitucionalidad de los actos oficiales a nombre exclusivamente del 'interés público' ". Se trata de una "grave y delicada función", que sólo debe realizarse de manera excepcional. Es un poder que debe ejercerse con mucha discreción y prudencia, porque de otro modo "constituiría una clara amenaza para la calidad democrática del sistema".

En *E.L.A. v. Aguayo*, supra, se indicó, además, que las limitaciones sobre la facultad de revisión judicial se fundamentan en factores tales como la falibilidad del juicio humano y la convicción de que este Tribunal perdería su influencia y prestigio —y finalmente su autoridad— si, a

diario, y sin una genuina necesidad, estuviese decidiendo sobre la validez constitucional de las actuaciones oficiales.

Parte del problema es que tales decisiones son, con frecuencia, controversiales. Dan lugar a agrias polémicas, no sólo entre las ramas de gobierno concernidas, sino incluso entre los propios integrantes de este Tribunal. Las diferencias de criterio entre sus Jueces, cuando se dilucidan abiertamente, tienen siempre algún costo social en términos del respeto público que se le tiene al régimen de derecho. Ello es particularmente cierto si la disputa entre los Jueces de este Tribunal gira en torno al significado de alguna disposición de la Constitución. Cuando se ventilan visiones judiciales en pugna, precisamente sobre la interpretación de la ley fundamental del país, el Derecho siempre pierde algo ante los ojos de la gente. Se aminora su imagen de objetividad y de confiabilidad. Queda, en mayor o menor grado, la impresión de que los mandatos, aun los de la Constitución, no son estables, sino que dependen subjetivamente de lo que digan los Jueces.

El malestar y la confusión que provocan las referidas interpretaciones conflictivas de la Constitución se agravan aún más cuando la disposición constitucional en cuestión aplica indefectiblemente a otras situaciones que no se han dilucidado judicialmente. Pueden quedar afectadas entonces otras personas que no estaban involucradas en el caso original, lo que probablemente daría lugar a pleitos adicionales, a nuevas polémicas y a mayor desazón. Por todo lo anterior, debe obviarse la interpretación conflictiva de la Constitución, siempre que sea posible, teniendo en mente lo importante que es mantener la fe pública en la justicia.

En este caso, dos (2) miembros de este Tribunal han formulado interpretaciones diametralmente opuestas sobre el alcance del mandato del Art. III, Sec. 15 de la Constitución del Estado Libre Asociado, *supra*. Bajo una de ellas, quedarían impugnadas incluso las licencias que ha concedido la Universidad de Puerto Rico a prominentes

legisladores. Se revela así una grave controversia en torno de la referida disposición de la Constitución, que no debemos dilucidar a menos que sea estrictamente necesario, sobre todo al considerar que cualquier interpretación que hagamos de la aludida sección del Art. III aplica, inevitablemente, a otras situaciones que no están ante nos ahora.

— O —

Opinión disidente emitida por el Juez Asociado Señor Corrada Del Río.

Nos enfrentamos en el presente recurso a la tarea de determinar si un empleado público puede ser recipiente de los beneficios de una licencia sin sueldo para desempeñarse en funciones inherentes al cargo de Senador al cual fue electo. Por las razones que expondremos a continuación, no podemos suscribir la posición que asume la mayoría en el presente caso. Los hechos incontrovertidos que dan lugar al presente recurso son los siguientes:

I

El apelante recurrente Eddie Zavala Vázquez (en adelante Sr. Zavala Vázquez) ha trabajado para el Estado Libre Asociado de Puerto Rico por espacio de veintitrés (23) años, y hasta el mes de diciembre de 1992 ocupaba la posición de Funcionario Administrativo V, en el Municipio de Ponce, aquí apelado recurrido (en adelante el Municipio), bajo la categoría de empleado de carrera. En las Elecciones Generales de noviembre de 1992, el Sr. Zavala Vázquez resultó electo Senador y tomó juramento de su cargo por el Distrito de Ponce, el 2 de enero de 1993, conforme lo dispone la Constitución del Estado Libre Asociado de Puerto Rico.

El 1ro de diciembre de 1992, el Sr. Zavala Vázquez solicitó del Alcalde de Ponce, Hon. Rafael Cordero Santiago,

que se le concediera una licencia sin sueldo, de manera que el día que cesara en su desempeño como Senador pudiera retornar a sus labores en el Municipio de Ponce.

El Alcalde Cordero Santiago dirigió una carta el 29 de diciembre de 1992 al Sr. Zavala Vázquez en respuesta a su petición, expresando en la parte pertinente:

> Lamento informarle que su solicitud es contraria al Artículo 3, Sección 15, de la Constitución del E.L.A. de Puerto Rico. Esta no permite y específicamente prohíbe el que un Senador o Representante ocupe un cargo en el Gobierno de P.R., sus Municipios o instrumentalidades.
>
> . . . . . . . . .
>
> ... El hecho de otorgarle una licencia sin sueldo según lo interpretado por la oficina Central de Administración de Personal (OCAP) no le desvincula de su cargo, haciendo tal situación una incompatibilidad insalvable, que no nos permite corresponder a su solicitud. En el momento en que usted asuma su cargo de Senador, quedará vacante la posición que usted ocupa en este Municipio. Petición de *certiorari*, Apéndice, pág. 012.

Inconforme, el Sr. Zavala Vázquez presentó un escrito de apelación ante la Junta de Apelaciones del Sistema de Administración de Personal del Estado Libre Asociado de Puerto Rico (en adelante J.A.S.A.P.). El 9 de junio de 1993, J.A.S.A.P. emitió una resolución en la que concluyó que la Sec. 15 del Art. III de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, no impide que el Municipio le otorgue al Sr. Zavala Vázquez una licencia sin sueldo para desempeñarse en el Senado de Puerto Rico. J.A.S.A.P. concluyó que en este caso el apelante no estaría ocupando un puesto o cargo en el Municipio de Ponce mientras se encuentre disfrutando de licencia sin sueldo. J.A.S.A.P. dispuso que: "según el propio término lo indica, un empleado en licencia sin sueldo no devenga salarios del puesto del cual se encuentra en licencia, y ello es así porque no está desempeñado las funciones del puesto, o lo que es lo mismo, no lo está 'ocupando' ". Petición de *certiorari*, Apéndice, pág. 008.

Presentada una moción de reconsideración de la deter-

minación de J.A.S.A.P. por parte del Municipio, ésta fue declarada no ha lugar mediante Resolución de 29 de junio de 1993, notificada el 2 de julio de 1993. Oportunamente, acudió el Municipio ante el entonces Tribunal Superior, Sala de Ponce (Hon. Miguel A. Montalvo Rosario, Juez) mediante un recurso de revisión judicial. El 15 de noviembre de 1993, dicho foro revocó la resolución emitida por J.A.S.A.P. por los fundamentos de que la Sec. 15 del Art. III de la Constitución del Estado Libre Asociado, *supra*, hace incompatible el cargo de legislador con cualquier otro cargo en el Gobierno de Puerto Rico y que se ha determinado que mientras un empleado disfruta de una licencia sin sueldo seguirá ocupando su puesto y éste se le conserva hasta su retorno. Debido a ello, el Tribunal concluyó que es ilegal otorgar una licencia sin sueldo al recurrente.

De esta determinación recurre ante nos el Sr. Zavala Vázquez mediante un recurso de *certiorari*, planteando las siguientes cuestiones y alegando la comisión de los errores que aquí reseñamos por parte del tribunal a quo:

Es o no ilegal la concesión de una licencia sin sueldo a un legislador mientras ocupa el cargo al que fu[e] electo, a tenor con la Sección 15 del Artículo III de la Constitución del Estado Libre Asociado de Puerto Rico.

Es o no correcto determinar que mientras se disfruta una licencia sin sueldo se ocupa propiamente el cargo el [sic] cual se disfruta dicha licencia.

Si erró o no el Tribunal Superior al no concederle al aquí recurrente la oportunidad de presentar sus argumentos en apoyo de su opo[s]i[c]ión al recurso de Revisión instado a tenor con la Regla 13 de la Ley de Procedimientos Administrativos Uniformes, 3 LPRA [sec.] 2101 y siguiente. Alegato de la parte recurrente, pág. 3.

En síntesis, en sus primeros dos (2) señalamientos, aduce el Sr. Zavala Vázquez que erró el foro sentenciador al concluir que un empleado de carrera que disfruta de una licencia sin sueldo sigue ocupando su puesto y al resolver que es ilegal la concesión de dicha licencia a un senador, en virtud de la prohibición constitucional contenida en el Art.

III, Sec. 15 de la Constitución del Estado Libre Asociado, *supra.*

Entendemos que el error se cometió. Veamos.

## II

Primeramente debemos consignar que, distinto a lo dispuesto para los maestros en la Ley Orgánica del Departamento de Educación, 3 L.P.R.A. sec. 391 *et seq.*, nada hay en la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1301 *et seq.*, en la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (21 L.P.R.A. sec. 4001 *et seq.*) ni en su reglamentación que configure el derecho específico de un empleado público a obtener una licencia sin sueldo para ejercer un cargo de elección popular. Aunque la concesión de tal beneficio marginal es teóricamente posible, ello depende de un ejercicio de discreción.

En *Berberena v. Echegoyen*, 128 D.P.R. 864 (1991), tuvimos la oportunidad de analizar el alcance de la Ley Orgánica del Departamento de Educación. Resolvimos allí que, dadas las circunstancias particulares de los maestros en el salón de clases y su contacto directo con los estudiantes, así como el hecho de que estos profesionales estén obligados por ley a renunciar a sus posiciones como empleados públicos una vez aceptan su candidatura oficial a un puesto de elección popular, no violaba la igual protección de las leyes y, por ende, no era inconstitucional la legislación que les garantiza una licencia con sueldo desde que se acepta dicha candidatura hasta un día después de las elecciones.

Hoy tenemos ante nuestra consideración una controversia de similar envergadura, aunque de distinta relevancia. Aquí, a diferencia de lo resuelto en *Berberena v. Echegoyen*, supra, están ausentes los reclamos de inconstitucionalidad del estatuto; meramente debemos decidir si un empleado

público puede recibir una licencia sin sueldo para desempeñarse como Senador en la Legislatura de Puerto Rico.

A tales efectos, debemos determinar si un empleado público que solicita una licencia sin sueldo "ocupa" su puesto de forma tal, que entre en vigor la prohibición constitucional a la que se refiere el Art. III, Sec. 15 de la Constitución del Estado Libre Asociado, *supra*.

De los reglamentos aplicables a la situación del caso de autos no surge una disposición específica sobre esta controversia. Sin embargo, a los empleados públicos se les garantiza, por disposición de ley, el retorno a su posición tan pronto cese la licencia sin sueldo. Por lo que la autoridad nominadora, en este caso el Municipio de Ponce, se ve impedido de sustituir al ocupante de una plaza de carrera que se encuentra en una de dichas licencias. Esta prohibición de sustitución, unido al hecho de que el empleado que se encuentra en licencia sin sueldo continúa beneficiándose de cualquier cambio favorable a su plaza, ha sido interpretada como significante de que aun cuando el empleado se encuentre en licencia sin sueldo, éste "ocupa" la plaza. En la opinión Núm. 10 del Secretario de Justicia para el año 1981 se expresó que: "Es de señalar que aun en el disfrute de una licencia sin sueldo, se ha dictaminado que un empleado sigue ocupando su puesto y éste se le conserva al empleado hasta su retorno, siendo precisamente el regreso de dicho empleado la condición *sine qua non* a la concesión de la licencia sin sueldo." (Énfasis suprimido.) LII (Núm. 1980-10) Op. Sec. Just. 56 (1981).

Sin embargo, debemos apartarnos del mero tecnicismo de la semántica lingüística y adentrarnos al verdadero propósito de la prohibición constitucional. No compartimos el criterio de que la controversia planteada ante nos puede ser resuelta sin necesidad de entrar en cuestionamientos constitucionales cuando existan fundamentos de distinta índole para disponer del caso. Esto es así dado el hecho de que en el presente caso la única razón esbozada por parte

del Municipio para no conceder la licencia sin sueldo solicitada por el Sr. Zavala Vázquez fue precisamente el hecho de que dicha licencia estaba prohibida por la disposición constitucional que aquí nos ocupa. Igual criterio fue seguido tanto por J.A.S.A.P. como por el tribunal a quo. Por lo cual, entendemos que es indispensable que analicemos el alcance de la referida disposición constitucional.

El Art. III, Sec. 15 de la Constitución del Estado Libre Asociado, *supra*, ed. 1982, pág. 343, conocido como "cláusula de incompatibilidad de cargos", establece que:

> Ningún Senador o Representante podrá ser nombrado, durante el término por el cual fue electo o designado, para ocupar en el Gobierno de Puerto Rico, sus municipios o instrumentalidades, cargo civil alguno creado, o mejorado en su sueldo, durante dicho término. *Ninguna persona podrá ocupar un cargo en el Gobierno de Puerto Rico, sus municipios o instrumentalidades y ser al mismo tiempo Senador o Representante. Estas disposiciones no impedirán que un legislador sea designado para desempeñar funciones ad honorem.* (Énfasis suplido.)

El transcrito precepto legal prohíbe, entre otras cosas, el que una persona que haya sido electa o designada senador o representante ocupe al mismo tiempo en que se desempeña como tal cualquier otro cargo en el Gobierno de Puerto Rico, sus municipios o instrumentalidades.

Del propio texto de la disposición constitucional antes citada surge como excepción que dicha disposición "no impedir[á] que un legislador sea designado para desempeñar funciones ad honorem" (Art. III, Sec. 15, Const. E.L.A., *supra*), lo que significa libre de compensación o retribución.

Durante las labores de discusión del precepto constitucional aquí en controversia en el pleno de la Asamblea Constituyente, el Delegado señor Gaztambide Arrillaga indicó que:

... La idea de esta disposición es que un legislador no *desempeñe* [sic] otro cargo, siempre y cuando que sea *ad honorem,* o sea, que *no tenga sueldo.* (Énfasis suplido y en el original.)[1]

Más adelante, en el mismo día y como parte de la antes citada discusión, este Delegado expresó que:

La idea de esto es impedir que se acumulen en unas pocas manos varios *sueldos.* Que el prestigio de un legislador pueda explotarse de tal manera que *reciba sueldos indebidos en más de una ocasión* por los servicios que presta a su pueblo. (Énfasis suplido.)[2]

Posteriormente el Delegado señor Negrón López, al resumir la discusión que se estaba llevando a cabo en el pleno expresó que:

El término "cargo civil" significa un cargo en el gobierno. "Cargo" es una posición pública, la cual, además de tener deberes que cumplir, *conlleva una remuneración.* (Énfasis suplido.)[3]

Por otro lado, el propio Delegado Negrón López expresó que la referida disposición constitucional que dispone sobre la incompatibilidad entre el cargo de legislador y cualquier otro cargo público en el Gobierno se establece "no ya con el propósito de que no se perciban dos sueldos, sino positivamente, por la razón de que conviene evitar por mortificaciones de alta moral pública, que una persona ocupe un cargo en una rama del gobierno, recibiendo la compensación que ese cargo conlleva, y ocupe en otra rama del gobierno un cargo incompatible en sus funciones y deberes, renunciando la compensación en el segundo cargo ...".[4]

---

[1] 2 Diario de Sesiones de la Convención Constituyente 778 (ed. 1961).

[2] Íd., pág. 779.

[3] Íd., pág. 780.

[4] Íd., pág. 781.

Ciertamente, las expresiones del Delegado Negrón López están delimitadas por el hecho de que el legislador "ocupe" otro cargo renunciando al sueldo de uno de ellos.

El alcance de estas expresiones, sin embargo, no hacen inoperante nuestras posición en el caso de autos, ya que, para los propósitos de la aplicación de la prohibición constitucional que surge de la cláusula de incompatibilidad de cargos, no se "ocupa" una plaza dentro del sistema de personal del Gobierno de Puerto Rico o sus instrumentalidades y municipios si el empleado se acoge a una licencia *sin* sueldo, ya que es el emolumento así como el ejercicio fáctico de las funciones inherentes al cargo las características fundamentales para determinar si un empleado "ocupa" o no un cargo público.([5])

Sobre este particular, en el momento de su aprobación final el texto del citado artículo quedó enmendado al sustituirse la palabra "Cargo Civil" por "Cargo", sin embargo, las expresiones de los Delegados en la Asamblea Constituyente recogen la verdadera intención y el real espíritu de esta disposición constitucional.

Sobre este particular, en el caso de autos el tribunal a quo, indica en la página tres (3) de su sentencia que, en relación con la cláusula de incompatibilidad de cargos,

---

([5]) A manera de ejemplo podemos señalar que en *Berberena v. Echegoyen*, 128 D.P.R. 864 (1991), el Juez Asociado Señor Negrón García expresó en su voto disidente que las licencias regulares, incluso la licencia sin sueldo, pueden ser una alternativa al conflicto allí planteado sobre la constitucionalidad de la Ley Orgánica del Departamento de Educación, que garantiza licencia *con* sueldo a los maestros que son candidatos a cargos electivos desde el 1ro de agosto del año electoral hasta el lunes inmediatamente después de las elecciones, y de resultar electos, licencia *sin* sueldo durante el término de su incumbencia. Expresó el Juez Asociado Señor Negrón García:

"Si la prohibición de hacer política *dentro de las aulas* es una restricción válida y razonable —*así lo creemos y nadie nunca la ha cuestionado*— ¿qué razón de ser, necesidad o racionalidad tiene el relevo automático que sirve de ancla al subsidio electoral mediante la licencia con sueldo? ¿Qué impide que los maestros, una vez sean candidatos, continúen enseñando sin hacer política? Si, como alega la mayoría, el problema es de conveniencia —no tienen tiempo suficiente para hacer ambas cosas— ¿qué evita que se acojan a las licencias regulares que tengan acumuladas, *incluso sin sueldo*, después de agotar las primeras para dedicarse de lleno a la política? ¿Por qué razón *forzarlos* a que cesen de enseñar?." (Énfasis en el original suprimido y énfasis suplido.) *Berberena v. Echegoyen*, supra, págs. 905–906.

"queda[n] únicamente exclu[idos] de esta prohibición constitucional aquellos casos en que el legislador sea nombrado para desempeñar sus funciones *ad honorem*, esto es, *sin percibir remuneración alguna*". (Énfasis suplido.) Petición de *certiorari*, Apéndice, pág. 003.

En el caso ante nuestra consideración, el Sr. Zavala Vázquez no reclama ocupar dos (2) cargos públicos y desempeñarse en éstos, ejerciendo funciones inherentes a ambos puestos, a la vez que devenga compensación dual, sino solamente el conservar el derecho o beneficio que le concede tanto la Ley de Personal del Servicio Público de Puerto Rico como el propio reglamento de personal del Municipio de que una vez concluido su servicio público al Pueblo de Puerto Rico, éste pueda retornar a sus antiguas labores.

El principio constitucional al que nos enfrentamos en el presente caso nunca ha sido objeto de análisis por parte de este Tribunal. Por otro lado, en *Pueblo ex rel. Arjona v. Landrón*, 57 D.P.R. 67 (1940), también nos expresamos sobre el desempeño de dos (2) posiciones en el Gobierno simultáneamente, pero en esa ocasión la controversia fundamental estribó en torno a la incompatibilidad de ejercer dos (2) funciones simultáneamente por ser ambos cargos incompatibles entre sí. Posteriormente, en *Cordero, Auditor v. Tribl. de Distrito*, 72 D.P.R. 378 (1951), nos enfrentamos ante la situación de determinar "si un senador puede renunciar a su cargo y ser nombrado Procurador General durante el período no transcurrido aún del término de cuatro años para el cual fu[e] electo al Senado". *Cordero, Auditor v. Tribl. de Distrito,* supra, pág. 378. Debemos hacer notar primeramente que la realidad jurídica que rodeó nuestra expresión en *Cordero, Auditor v. Tribl. de Distrito*, supra, es esencialmente distinta a la que tenemos ahora. En aquel entonces, la Constitución del Estado Libre Asociado todavía no había entrado en vigor y regía en la isla la Carta Orgánica como máxima autoridad de ley local. En

este cuadro jurídico, resolvimos allí que bajo la enmienda efectuada por el Congreso federal al Art. 30 de la Carta Orgánica, Ley Jones, 39 Stat. 959, Documentos Históricos, Sec. 30, L.P.R.A., Tomo 1, un senador puede renunciar a su cargo y ser nombrado a un cargo civil en el gobierno central.

Posteriormente, en *González v. Alcalde de Utuado*, 101 D.P.R. 47 (1973), resolvimos que aun cuando renuncie a su cargo, un senador, representante o funcionario público no puede ocupar durante el término para el cual fue electo un empleo o cargo civil en el Gobierno de Puerto Rico, sus municipios o instrumentalidades, creado o mejorado en su sueldo durante dicho término. Sobre el particular, la resolución emitida por J.A.S.A.P. específicamente dispuso que el Sr. Zavala Vázquez no podría acogerse a los posibles beneficios que se le adicionaran a su posición como resultado de sus funciones como legislador.

Así también, y a manera de comparación, tenemos ejemplos de situaciones en los cuales, a pesar de existir una prohibición expresa de ley, de la incompatibilidad de ejercer más de un cargo, se ha permitido el desempeño en uno si en el otro se disfruta de una licencia sin sueldo. Ese es el caso de los profesores universitarios que son nombrados a la Judicatura y que reciben una licencia sin sueldo durante su incumbencia.

Como fundamento de su determinación, el foro de instancia cita el caso *Añeses v. Consejo Ejecutivo*, 38 D.P.R. 267, 277 (1928), en el cual se expresa: "Parece conveniente agregar con relación a esto que si dos cargos son incompatibles, entonces, según ha sido resuelto por la gran preponderancia de las autoridades, la aceptación del segundo deja vacante el primero." Sin embargo, las expresiones vertidas en *Añeses v. Consejo Ejecutivo*, supra, son claramente distinguibles de la situación ante nos.

En aquella ocasión, también expresamos que como una posible solución a la incompatibilidad de ejercer dos (2) posiciones simultáneamente dentro del andamiaje gubernamental del Estado, "[c]ada uno de ellos tal vez podría prestar sus servicios sin recibir compensación alguna". *Añeses v. Consejo Ejecutivo*, supra, pág. 277. Así se limitó la discreción sobre la incompatibilidad de "ejercer" una dualidad de roles, al hecho de la remuneración económica que se pueda recibir por éstos, donde sólo es aceptable que, en efecto, se reciba sueldo por una sola de estas funciones. Como expresáramos anteriormente, la mayor distinción entre lo resuelto en *Añeses v. Consejo Ejecutivo*, supra, y la situación ante nos estriba en que allí se atiende el asunto del desempeño de dos (2) puestos con deberes y compensaciones independientes, y se asume que el mismo funcionario ejercerá las funciones de ambos puestos y devengará los salarios y retribuciones que le corresponda a ambas posiciones.

En resumen, podemos concluir que la prohibición constitucional a la que se refiere el Art. III, Sec. 15 de la Constitución del Estado Libre Asociado, *supra*, no es de aplicación a los funcionarios públicos que solicitan y se les concede una licencia sin sueldo para desempeñar sus funciones en la Asamblea Legislativa.

Resuelta esta controversia, podemos analizar ahora si, a la luz de las disposiciones de ley aplicables, el Sr. Zavala Vázquez tenía derecho a recibir una licencia sin sueldo de sus funciones como Oficial Administrativo V en el Municipio de Ponce para desempeñarse en su cargo como Senador.

Excepto en los casos en que la ley o los reglamentos específicamente establecen el deber de concederla —como es el caso de los maestros que, previa solicitud al respecto, tienen derecho a una licencia sin sueldo por el término de su incumbencia en el cargo al que fueron electos— el otor-

gamiento de una licencia sin sueldo depende más de las necesidades del servicio y de la agencia que la otorga que de las necesidades de los empleados que la solicitan.[6]

En estos casos la licencia sin sueldo tradicionalmente se ha considerado como un privilegio que se concede a los empleados regulares con el propósito de que éstos prosigan estudios, adquieran experiencia provechosa para el servicio, o por cualquier otra razón de mérito.

Es evidente que la concesión de una licencia sin sueldo puede acarrear serios inconvenientes, ya que en muchos casos, por tenerse que reservar el puesto que deja vacante el empleado en uso de la licencia, se dificulta el reclutamiento de un sustituto y se pueden afectar algunos servicios esenciales a la comunidad.

Por tal motivo, al evaluar los méritos de una licencia sin sueldo, debe considerarse no solamente la necesidad del empleado de ausentarse del servicio público y el beneficio que representaría dicha licencia para la agencia, sino también las dificultades que la concesión de la licencia acarrearía a la agencia o entidad. Antes de recomendarla, la autoridad nominadora debe asegurarse de que los beneficios que obtendrá el servicio público serán tales que sobrepasen los problemas que la concesión de la licencia conlleva.

Como requisito para la concesión de una licencia sin sueldo deberá también exigirse al empleado la seguridad de que se reintegrará a su puesto una vez finalice el período de licencia sin sueldo. Bajo ningún concepto debe concederse una licencia sin sueldo a un empleado como medio de retenerle el puesto mientras prueba fortuna en otros campos.

La Sec. 5.15 de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1355, establece:

---

[6] Véase, a tales efectos, tanto el inciso (8) de la Sec. 12.4 del Reglamento de Personal: Administración Central, Oficina Central de Administración de Personal, 14 de octubre de 1976, como el inciso (8) de la Sec. 11.4 del Reglamento de Personal del Municipio de Ponce.

Además de los beneficios marginales que se establecen para los empleados públicos mediante leyes especiales ... éstos tendrán derecho, entre otros, a los siguientes, *según se disponga mediante reglamento*:
(1) Licencia de vacaciones;
(2) licencia por enfermedad;
(3) licencias especiales por causa justificada, con o sin paga, según fuere el caso, tales como: licencia por maternidad, licencia para fines judiciales, licencia con sueldo para participar en actividades en donde se ostente la representación del país, licencia militar y *licencia sin sueldo.*
(4) licencias por servicios voluntarios a los Cuerpos de la Defensa Civil en casos de desastre.
*Será responsabilidad de cada agencia velar por la protección y buena administración de los beneficios marginales de los empleados.* (Énfasis suplido.)

La ley establece una obligación de cada agencia de tomar en consideración estos derechos de los empleados públicos en sus reglamentos. El Reglamento de Personal de la Administración Central, que incluye a todos los departamentos del Gobierno, establece en su Sec. 12.4 sobre licencias que:

Los empleados de las agencias comprendidas en la Administración Central tendrán derecho a las siguientes licencias, con o sin paga, conforme se establece a continuación:
1. Licencia de vacaciones
[Texto omitido]
2. Licencia por [e]nfermedad
[Texto omitido]
3. Licencia [m]ilitar
[Texto omitido]
4. Licencia para [f]ines [j]udiciales
[Texto omitido]
5. Licencia de [m]aternidad
[Texto omitido]
6. Licencia para [e]studios y[a]diestramientos
[Texto omitido]
7. Licencias [e]speciales con [p]aga
[Texto omitido]
8. Licencia sin [p]aga
a) En adición a las licencias sin paga provistas en otras secciones de este reglamento, se concederán las siguientes:
(1) Para prestar servicios en otra agencia del Gobierno o

entidad privada, de determinarse que *la experiencia que derive el empleado le resolverá una necesidad comprobada de adiestramiento a la agencia o al servicio público.*

. . . . . . . .

b) Duración de la licencia sin paga. La licencia sin paga se concederá por un período no mayor de un año, *excepto que podrá prorrogarse a discreción de la agencia cuando exista una expectativa razonable de que el empleado se reintegrará a su trabajo.* Al ejercer su discreción la agencia deberá determinar que se logra, por lo menos, uno de los siguientes propósitos:

. . . . . . . .

(4) *Ayuda a promover el desarrollo de un programa del Gobierno, cuando estando trabajando en otra agencia o entidad, el continuar prestando servicios redunda en beneficio del interés público.* Sec. 12.4(8) del Reglamento de Personal: Administración Central, Oficina Central de Administración de Personal, 14 de octubre de 1976, págs. 84–114.

Al respecto, el Reglamento de Personal del Municipio de Ponce establece en su Sec. 11.4 lo referente a licencias. En el inciso (8) del citado reglamento se establece lo relacionado a las licencias sin paga:

8) *Licencia sin paga*
a) En adición a las licencias sin paga provistas en otras secciones de este reglamento, se concederán las siguientes:
1) Para prestar servicios en otra agencia del Gobierno o entidad privada, de determinarse que la experiencia que derive el empleado le resolverá una necesidad comprobada de adiestramiento al Municipio o al servicio público.

. . . . . . . .

b) Duración de la licencia sin paga.
La licencia sin paga se concederá por un período no mayor de un año, excepto que podrá prorrogarse a discreción del Alcalde *cuando exista una expectativa razonable de que el empleado se reintegrará a su trabajo.* Al ejercer su discreción el Alcalde deberá determinar que se logra, por lo menos, uno de los siguientes propósitos:

. . . . . . . .

4) *Ayuda para promover el desarrollo de un programa del Gobierno, cuando estando trabajando en otra agencia o entidad, el continuar prestando servicios redunda en beneficio del interés público.*

Según reseñado anteriormente, tanto la Ley de Personal del Servicio Público de Puerto Rico, el Reglamento de Personal: Administración Central, Sec. 12.4(8)(a)(1), *supra*, y el Reglamento del Municipio de Ponce, Sec. 11.4(8)(a)(1), disponen que un empleado público podrá ser beneficiario de una licencia sin sueldo como un derecho del empleado con el propósito de "prestar servicios en otra agencia del Gobierno o entidad privada, de determinarse que la experiencia que derive el empleado le resolverá una necesidad comprobada de adiestramiento al Municipio o al servicio público".

Entendiendo que no es de aplicación a la situación del caso de autos la prohibición existente en la Constitución sobre incompatibilidad de funciones, no existe impedimento legal para que el Municipio, en su capacidad de autoridad nominadora, evalúe la solicitud del Sr. Zavala Vázquez y, de forma que no sea incompatible con lo aquí señalado, determine si procede, a la luz de su propio reglamento y de los criterios anteriormente discutidos que de ellos se desprenden, si es procedente o no el otorgamiento de la mencionada licencia. Surge de la carta enviada por el Municipio al Sr. Zavala Vázquez que no se podrá atender su solicitud de licencia sin sueldo ya que la cláusula de incompatibilidad de cargos de la Constitución del E.L.A. así lo prohíbe. De lo anterior es imposible inferir si, salvado el impedimento constitucional, el Municipio accedería o no a la licencia sin sueldo o si concedería el beneficio de extender el término de ésta, ya que de entrada el Municipio no evaluó en sus méritos la solicitud presentada, despachando ésta a la luz de un impedimento constitucional.

Procedería entonces, de determinarse que la referida licencia pueda ser concedida, que la autoridad nominadora le extendiese o no la licencia por términos anuales, a su discreción, siguiendo como guía lo establecido en su reglamento de personal para dichos fines. Además, debemos dejar aclarado que el Sr. Zavala Vázquez no podrá disfrutar de ningún beneficio que se le pudiese haber añadido a su

antigua posición y que resulte de la intervención de la Asamblea Legislativa a la cual pertenece.

No estaríamos, en nuestra opinión, ordenando al Municipio de Ponce que conceda la licencia sin sueldo, sino que aplique los principios anteriormente discutidos y ejerza su discreción, dentro del marco de los reglamentos aplicables, para evaluar si procede o no concederla.

Por los anteriores fundamentos, disiento de la sentencia de la mayoría y, en su lugar, hubiese revocado la sentencia recurrida.