*In re* RAFAEL QUIÑONES AYALA, querellado.

*Número:* AB-2004-253        *Resuelto:* 30 de junio de 2005

*Salvador Antonetti Stutts*, procurador general; *Hiram Morales Lugo*, director ejecutivo de la Oficina de Ética Gubernamental; *Margarita Carrillo Iturrino* y *Mario A. Rodríguez Torres*, abogados del querellado.

PER CURIAM:

# I

El 9 de diciembre de 2003, el Área de Investigaciones y Procesamiento Administrativo de la Oficina de Ética Gubernamental (O.E.G.) presentó una querella contra el Lcdo. Rafael Quiñones Ayala (querellado), imputándole infracciones a los Arts. 3.2(c) y 3.4(d) de la Ley Núm. 12 de 24 de julio de 1985,[1] según enmendada, conocida como la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico, así como a los subincisos (2), (3) y (4) del Art. 13(C) del Reglamento de Ética Gubernamental.[2]

En síntesis, la O.E.G. alegó que durante los meses de junio, julio y agosto de 2003[3] el querellado, quien entonces ocupaba un puesto de abogado a jornada completa en la

---

[1] El Art. 3.2(c) de la referida ley dispone lo siguiente:

"[N]ingún funcionario o empleado público utilizará los deberes y facultades de su cargo ni la propiedad o fondos públicos para obtener, directa o indirectamente para él, para algún miembro de su unidad familiar, ni para cualquier otra persona, negocio o entidad, ventajas, beneficios o privilegios que no estén permitidos por ley." 3 L.P.R.A. sec. 1822(c).

Por su parte, el Art. 3.4(d) del citado estatuto establece lo siguiente:

"[N]ingún funcionario o empleado público a jornada completa podrá, durante horas laborables, representar, asesorar o servir como perito a personas o entidades privadas en litigios, vistas, audiencias públicas o cualquier asunto ante tribunales de justicia, organismos cuasi judiciales y agencias administrativas." 3 L.P.R.A. sec. 1824(d).

[2] En lo aquí pertinente, el Art. 13(C) del Reglamento de Ética Gubernamental, relativo a las actividades incompatibles con el empleo, establece lo siguiente:

"[N]ingún funcionario o empleado público aceptará otro empleo, ni se dedicará a cualquier actividad comercial, profesional o de otra naturaleza, en las siguientes circunstancias:

. . . . . . . .

"2) Cuando interfiera o razonablemente se pueda esperar que influya en el desempeño de sus funciones oficiales.

"3) Cuando le impida prestar una jornada completa de trabajo a la agencia.

"4) Cuando traiga descrédito a la agencia o al Gobierno." Reglamento Núm. 4827 de la Oficina de Ética Gubernamental de 23 de noviembre de 1992, pág. 15.

[3] Específicamente durante los días 24 de junio, 15 de julio y 1 de agosto de 2003, fechas en las que éste compareció ante el Tribunal de Primera Instancia, Sala de San Juan, en representación del Sr. Carlos Rodríguez Rivera en asuntos de naturaleza penal.

División Legal de la Administración de Derecho al Trabajo (A.D.T.), representó *durante horas laborables* a un ciudadano particular ante los tribunales del país en asuntos no relacionados con sus deberes oficiales como servidor público, anteponiendo de esta forma los intereses de su representado a los del Estado. Sostuvo, además, que el querellado certificó en las hojas oficiales de asistencia de la A.D.T. que durante las fechas en controversia había estado ocupado en asuntos inherentes a su cargo, cuando en realidad ejercía la profesión de abogado en su carácter privado. Finalmente, planteó que el licenciado Quiñones Ayala cobró salarios y recibió beneficios indebidamente por servicios que, si bien eran su responsabilidad, nunca rindió.

El 18 de diciembre de 2003 la O.E.G. presentó una querella enmendada en la que reiteró sus alegaciones contra el querellado y le atribuyó, además, una violación a los subincisos (1), (3), (4) y (6) del Art. 6(A) del Reglamento de Ética Gubernamental.[4] Luego de varios incidentes procesales, el 13 de febrero de 2004, el licenciado Quiñones Ayala presentó su contestación a la querella enmendada.

Durante la fase de descubrimiento de prueba, las partes lograron un Acuerdo de Transacción, en el cual el querellado admitió que cometió las infracciones imputadas en la querella, obligándose a pagar una multa administrativa de

---

[4] En lo pertinente, la citada disposición reglamentaria establece lo siguiente: "Todo servidor público deberá:

"(A) Evitar tomar cualquier acción, esté o no específicamente prohibida por este Reglamento, que pueda resultar en o crear la apariencia de:

"1) Usar las facultades de su cargo, propiedad o fondos públicos para un fin privado.

. . . . . . . .

"3) Impedir o entorpecer la eficiencia y la economía gubernamental.

. . . . . . . .

"4) Perder su completa independencia o imparcialidad.

. . . . . . . .

"6) Afectar adversamente la confianza del público en la integridad y honestidad de las instituciones gubernamentales." Reglamento Núm. 4827, *supra*, pág. 5.

dos mil ochocientos dólares.[5] El referido acuerdo fue presentado ante la O.E.G. el 17 de junio de 2004 y, al día siguiente, la Oficial Examinadora designada suscribió una orden mediante la cual refirió el expediente del caso a la consideración del Director Ejecutivo de la O.E.G. y recomendó favorablemente el acuerdo transaccional sometido.

Tras varios incidentes procesales, el 29 de septiembre de 2004 el Lcdo. Hiram R. Morales Lugo, Director Ejecutivo de la O.E.G., dictó una resolución[6] para aprobar el Acuerdo de Transacción presentado por las partes y aceptó, además, la suma de dos mil ochocientos dólares consignada por el querellado en pago de la sanción administrativa impuesta. De igual forma, nos refirió el asunto para que determináramos las posibles violaciones del querellado a la ética profesional.

## II

El 4 de noviembre de 2004 la O.E.G., por conducto de su Director Ejecutivo, presentó ante nos una queja juramentada[7] contra el licenciado Quiñones Ayala en la cual le imputó una violación al Canon 38 del Código de Ética Profesional,[8] a la luz de nuestros pronunciamientos en *In re Silvagnoli Collazo*, 154 D.P.R. 533 (2001). La queja está fundada en los mismos hechos previamente investigados y

---

[5] Ambas partes acordaron que, en vista de la difícil situación económica que atravesaba el licenciado Quiñones Ayala, éste habría de hacer un pago parcial inicial de mil cuatrocientos dólares al momento de suscribir el acuerdo. El balance pendiente de la multa sería satisfecho en dos plazos adicionales de setecientos dólares cada uno, a ser consignados en la Secretaría de la O.E.G. los días 18 de julio y 18 de agosto de 2004, respectivamente.

[6] El archivo en autos de una copia de la notificación de dicha resolución a las partes se efectuó el 30 de septiembre de 2004.

[7] Junto a la referida queja juramentada, el Director Ejecutivo de la Oficina de Ética Gubernamental acompañó una copia certificada del expediente del caso *Oficina de Ética Gubernamental v. Rafael Quiñones Ayala*, Núm. 04–51, según obra en la Secretaría de la referida agencia gubernamental.

[8] 4 L.P.R.A. Ap. IX. Este canon se refiere a la preservación del honor y la dignidad de la profesión de la abogacía.

adjudicados por la O.E.G. mediante su Resolución de 29 de septiembre de 2004.

El licenciado Quiñones Ayala presentó su contestación a la queja de epígrafe el 27 de enero de 2005. Arguyó que al realizar las gestiones a favor del señor Rodríguez Rivera ante el Tribunal de Primera Instancia, no medió ánimo de lucro personal ni recibió compensación alguna, puesto que el representado era su amigo y vecino. Destacó que había invertido menos de nueve horas laborables en dichas gestiones; sin embargo, *admitió que incurrió en un error de juicio al así proceder.*

En cuanto a las hojas oficiales de asistencia se refiere, manifestó que no había tenido la intención de defraudar al erario al cumplimentarlas. En ese sentido, señaló que las hojas de asistencia en controversia habían sido completadas "en bloque" y que, al llenarlas, solamente cotejó el calendario de trabajo preparado en su oficina, olvidando anotar las gestiones que había efectuado en beneficio de su amigo durante las mañanas del 24 de junio y el 15 de julio, y en la tarde del 1ro de agosto de 2003. Sostuvo que, de haberlas recordado, las habría consignado en sus hojas de asistencia y, además, hubiera efectuado las correspondientes deducciones a las horas trabajadas en las referidas fechas.

De otra parte, y contrario al criterio expresado por la O.E.G. en su queja, el licenciado Quiñones Ayala arguyó que el caso *In re Silvagnoli Collazo*, supra, es distinguible de la situación fáctica ante nos. Sostuvo, además, que al evaluar la queja instada en su contra debíamos tomar en consideración, entre otras, las circunstancias siguientes: (i) que éste *admitió haber cometido las infracciones imputadas en la querella presentada por la O.E.G.*; (ii) que satisfizo en su totalidad la multa administrativa que se le impuso a raíz de esas infracciones; (iii) que fue sancionado administrativamente por la A.D.T. por los mismos hechos, al ordenarse su suspensión de empleo y sueldo por un término de quince días; (iv) que su patrono, además, le des-

contó tres días de su licencia regular por vacaciones, a pesar de que las gestiones realizadas a favor del señor Rodríguez Rivera no excedieron de nueve horas laborables, y (v) que acató el dictamen de su patrono y, luego de cumplida la sanción administrativa, decidió renunciar a su empleo en la A.D.T.[9] Por último, el licenciado Quiñones Ayala manifestó estar *"real y sinceramente"* arrepentido de *las actuaciones por las que ahora se le pretende sancionar disciplinariamente, las cuales "acepta y repudia".*

El 29 de marzo de 2005, el Procurador General presentó su informe. Indicó que, a la luz de los hechos aquí no controvertidos y de lo resuelto por esta Curia en *In re Silvagnoli Collazo*, supra, existe base para imputarle al querellado "una posible violación" al Canon 38 del Código de Ética Profesional, *supra.*

El 24 de mayo de 2005 emitimos una resolución[10] en la cual le concedimos al licenciado Quiñones Ayala un término de veinte días para expresarse respecto al informe sometido por la Oficina del Procurador General. Éste compareció, en cumplimiento con nuestro requerimiento, el 2 de junio de 2005. Se reiteró en sus planteamientos anteriores: *aceptó haber incurrido en una violación al Canon 38*, supra, *y manifestó su sincero arrepentimiento por ello.* Igualmente, suplicó nuestra lenidad al castigarle por la falta cometida.

## III

La práctica de la abogacía está revestida de un alto interés público que requiere de una estricta observancia y reglamentación.[11] Distinto quizás a otras profesio-

---

[9] El querellado renunció a su puesto en la Administración del Derecho al Trabajo el 21 de marzo de 2004, para ser efectiva el 15 de abril del mismo año.

[10] Notificada a las partes el 25 de mayo de 2005.

[11] Véanse: *In re Negrón Negrón*, 163 D.P.R. 586 (2005); *In re Pagán Ayala*, 115 D.P.R. 814, 815 (1984).

nes, esa práctica conlleva una seria y delicada función ciudadana, pues representa servicio, ética y ejemplo.([12])

■ En cuanto a los deberes de exaltar el honor y la dignidad de la profesión, y de evitar la apariencia de una conducta impropia, el Canon 38 del Código de Ética Profesional, *supra*, dispone lo siguiente:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. ...
> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable.

En repetidas ocasiones, este Tribunal ha advertido que por ser los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen.([13])

De igual forma, reiteradamente hemos enfatizado que todo abogado habrá de desempeñarse con dignidad y alto sentido del honor, aunque eso implique ciertos sacrificios personales.([14]) Además, deberá conducirse en forma digna y honorable, tanto en la vida privada como en el desempeño de su profesión.([15])

---

([12]) Véanse: *In re Cuyar Fernández*, 163 D.P.R. 113 (2004); *In re Cintrón Colón*, 161 D.P.R. 778 (2004); *Ramos Acevedo v. Tribunal Superior*, 133 D.P.R. 599, 613 (1993).

([13]) Véanse: *In re Cuyar Fernández*, supra; *In re Cintrón Colón*, supra; *In re Silvagnoli Collazo*, 154 D.P.R. 533 (2001); *In re Ortiz Brunet*, 152 D.P.R. 542 (2000); *In re Coll Pujols*, 102 D.P.R. 313, 319 (1974).

([14]) Véanse: *In re Silvagnoli Collazo*, supra; *In re Colón Ramery*, 133 D.P.R. 555, 562 (1993).

([15]) Véanse: *In re Silvagnoli Collazo*, supra; *In re Irizarry, González*, 151 D.P.R. 916 (2000).

## IV

En la queja juramentada presentada ante nos, la O.E.G. le imputa al licenciado Quiñones Ayala una infracción al Canon 38 del Código de Ética Profesional, *supra*, de acuerdo con nuestros pronunciamientos en *In re Silvagnoli Collazo*, supra. Por su parte, el querellado admite haber incurrido en la falta imputada, pero sostiene que el citado caso es "distinguible" de la situación fáctica que hoy nos ocupa.

En *In re Silvagnoli Collazo*, supra, resolvimos, entre otras cosas, que viola el deber de conducirse digna y honorablemente y de evitar la apariencia de conducta profesional impropia, aquel abogado que devenga ingresos de un municipio por servicios legales no prestados.

Como parte de su acuerdo con la O.E.G. para transigir la querella administrativa[16] en su contra, el licenciado Quiñones Ayala admitió haber cometido las faltas allí imputadas y, con ello, haber devengado ingresos de la A.D.T. por servicios no prestados; lo que implica, invariablemente, el cobro indebido de fondos públicos. De igual forma, en su comparecencia ante nos, el licenciado Quiñones Ayala acepta que violó las disposiciones del Canon 38 del Código de Ética Profesional, *supra*. El precepto al que hacemos referencia le imponía al querellado el deber de preservar, en todo momento, el honor y la dignidad de su profesión, y el de evitar la apariencia de conducta profesional inadecuada.[17]

Las gestiones del licenciado Quiñones Ayala, independientemente de que fueran en beneficio de su amigo y vecino, y que sólo consumieran un término de horas laborables relativamente corto, fueron *patentemente contrarias a los postulados éticos que gobiernan esta comprometida profesión y lesionan la dignidad de su ministerio.*

---

[16] Caso Núm. 04–51.

[17] Véanse: Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX; *In re Silvagnoli Collazo*, supra.

■ Al determinar la sanción disciplinaria que habrá de imponerse a un abogado que haya incurrido en conducta antiética, podemos tomar en cuenta los factores siguientes: (i) la buena reputación del abogado en la comunidad; (ii) su historial previo; (iii) si ésta constituye su primera falta y si alguna parte ha resultado perjudicada; (iv) *la aceptación de la falta y su sincero arrepentimiento*; (v) si se trata de una conducta aislada; (vi) *el ánimo de lucro que medió en su actuación*; (vii) resarcimiento al cliente, y (viii) cualesquiera otras consideraciones, ya bien *atenuantes o agravantes*, que medien de acuerdo con los hechos.[18]

En el presente caso reconocemos que si bien el licenciado Quiñones Ayala incurrió en una conducta constitutiva de violación al Canon 38, *supra*, no es menos cierto que, al así proceder, invirtió una cantidad reducida de horas laborables —nueve específicamente— para atender los asuntos legales de un ciudadano particular. Por ende, no estamos frente a un abogado que haya practicado activa y copiosamente la abogacía en horas laborables, tal como ocurrió en *In re Silvagnoli Collazo*, supra.[19] Además, es de rigor subrayar que el querellado no recibió compensación económica de parte del señor Rodríguez Rivera por las gestiones que realizara en su defensa.

También debemos tomar en consideración que el licenciado Quiñones Ayala alcanzó un acuerdo transaccional con la O.E.G., aceptando su responsabilidad por las infracciones imputadas, y que satisfizo en su totalidad la multa administrativa que le impusieron. Asimismo, éste fue objeto de una sanción administrativa de parte de su antiguo patrono, la cual acató cabalmente. Por último, el querellado, además de aceptar haber incurrido en conducta pro-

---

[18] Véanse: *In re Montalvo Guzmán*, 164 D.P.R. 806 (2005); *In re Martínez Lloréns*, 158 D.P.R. 642 (2003); *In re Vélez Barlucea*, 152 D.P.R. 298, 310–311 (2000); *In re Padilla Rodríguez*, 145 D.P.R. 536 (1998).

[19] El abogado que allí sancionamos dedicó *226.25 horas* laborables de su empleo como asesor del Municipio de Ponce para atender casos privados, obteniendo una remuneración económica sin prestar servicio alguno a su patrono.

fesional impropia, ha mostrado, en varias ocasiones, *un genuino arrepentimiento por sus actuaciones y las repudia.*

## V

En virtud de los fundamentos que preceden, *concluimos que el licenciado Quiñones Ayala infringió, con su conducta, el Canon 38 del Código de Ética Profesional,* supra, *al atender la práctica privada de la abogacía durante horas laborables, en vez de cumplir con los deberes oficiales de su puesto en la División Legal de la A.D.T. Sin embargo, su actuación no reviste la gravedad de lo sucedido en In re Silvagnoli Collazo,* supra, *y en vista de las circunstancias atenuantes aquí presentes, limitamos la sanción disciplinaria a una censura enérgica. No obstante, se le apercibe al querellado que en el futuro deberá dar fiel cumplimiento a los cánones del Código de Ética Profesional que rigen la profesión de la abogacía o, de lo contrario, será objeto de sanciones disciplinarias más severas.*

*Se dictará sentencia de conformidad. Notifíquese personalmente.*

El Juez Asociado Señor Rebollo López no intervino.