per curiam:
Nos corresponde atender una querella contra un abogado a quien se le imputa haber incurrido en actos que violaron el Art. 3.2(a) de la Ley Núm. 12 de 24 de julio de 1985, según enmendada, conocida como la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico (Ley de Ética Gubernamental), 3 L.P.R.A. sec. 1822(a).(1) Estas violaciones ocurrieron como consecuencia de unas actuaciones llevadas a cabo mientras éste disfrutaba de los beneficios de una licencia sindical con sueldo en su puesto de oficinista en la Corporación del Fondo del Seguro del Estado, y no en el ejercicio de la profesión legal.
Por entender que la actuación del querellado se apartó de las normas éticas que rigen el ejercicio de la profesión, resolvemos que su conducta infringió el Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.
*171 l-H
El Ledo. Richard Rodríguez Vázquez (querellado) fue admitido a la práctica de la abogacía el 13 de enero de 1992 y al ejercicio del notariado el 1 de abril de 1992. Este ocupó varias plazas de trabajo en la Corporación del Fondo del Seguro del Estado (Fondo) desde 1976. Laboró en diversos puestos, desde Conserje hasta Oficinista; sin embargo, nunca ejerció como abogado en dicha corporación.
Al momento de los hechos que originan este procedimiento disciplinario, el querellado era el presidente de la Hermandad de la Unión de Empleados del Fondo del Seguro del Estado (Unión). Bajo su presidencia, se creó Jaca Travel, Inc. como una entidad para dar servicio a los unionados. Jaca Travel, Inc. era una agencia de viajes para la venta de pasajes y excursiones, y comenzó operaciones en febrero de 1998 desde las oficinas de la Unión. El querellado era también el presidente de dicha agencia de viajes, que tenía como objetivo el generar ingresos adicionales para la Unión.
Para la fecha de los acontecimientos aquí relatados, el Fondo, en acuerdo con la Unión, aportaba fondos públicos anualmente para auspiciar actividades deportivas, culturales y sociales de los empleados unionados. La Unión había planificado una excursión para los empleados unionados del Fondo y sus familiares, que se llevaría a cabo en febrero de 1998. En enero de ese mismo año, dos agencias de viajes presentaron cotizaciones para la actividad. Posteriormente, en febrero, Jaca Travel, Inc. presentó una cotización más baja, por lo que finalmente se le adjudicó el contrato para dar sus servicios en la actividad.
El Fondo desembolsó, mediante un cheque, la cantidad de seis mil cuatrocientos cincuenta dólares a nombre de Jaca Travel, Inc. para los gastos de la referida actividad. De la cantidad total para la actividad resultó un sobrante, cuyo monto exacto no fue establecido, excepto que fue no *172 menor de tres mil dólares. El querellado y el Sr. Teddy Del Valle Hernández,(2) delegado de la Unión para ese entonces, abrieron dos cuentas en el Banco Popular, a nombre de cada uno, por la cantidad de mil quinientos dólares varios días después de la referida actividad y utilizaron dicha cantidad para gastos personales.(3)
El 6 de diciembre de 2001, el Área de Investigaciones y Procesamiento Administrativo de la Oficina de Etica Gubernamental (O.E.G.) presentó una querella contra el licenciado Rodríguez Vázquez, imputándole infracciones al Art. 3.2(a), (c) y (h) de la Ley de Ética Gubernamental.(4) Así mismo, se le imputó violaciones al Art. 6(A)(1), (6) y (7), (D), (E) y (H) del Reglamento de Ética Gubernamental, Reglamento Núm. 4827 del Departamento de Estado de 20 de diciembre de 1992.
El Oficial Examinador que evaluó el caso en la O.E.G. encontró probado que el querellado se apropió ilegalmente de mil quinientos dólares pertenecientes a Jaca Travel, Inc., negocio perteneciente a la Unión. No obstante, recomendó el archivo de la querella debido a que entendió que la O.E.G. no tenía jurisdicción en el caso, ya que el abogado no estaba ejerciendo funciones como servidor público por estar disfrutando de una licencia sindical.
El Ledo. Hiram R. Morales Lugo, Director Ejecutivo de la O.E.G., en el ejercicio de su facultad legal y reglamentaria, acogió y adoptó las determinaciones de hechos esbozadas por el Oficial Examinador y su apreciación de la prueba. No obstante, no adoptó la totalidad de las conclusiones de derecho de éste, pues concluyó que la Ley de Ética Gubernamental aplica a los funcionarios públicos, *173 aunque éstos estén acogidos a una licencia administrativa.(5)
La O.E.G. concluyó que el querellado se apropió ilegalmente de parte del dinero sobrante de Jaca Travel, Inc. —mil quinientos dólares— los que depositó en una cuenta que abrió para esos fines y utilizó dicho dinero para sus gastos personales.(6) En consecuencia, determinó que el querellado violó el Art. 3.2(a) de la Ley de Ética Gubernamental, supra,(7) por lo que le impuso una multa de cuatro mil quinientos dólares.(8) Además, nos remitió el expediente, lo que dio lugar a este procedimiento disciplinario.
Con relación a la resolución de la O.E.G. que impuso al aquí querellado la multa de cuatro mil quinientos dólares, es preciso señalar que éste presentó un recurso de revisión ante el Tribunal de Apelaciones, el cual fue desestimado por falta de jurisdicción.(9) Ante esto, la resolución de la O.E.G. advino final y firme, y el querellado pagó la sanción impuesta.
Como consecuencia del referido que nos hiciera el Director Ejecutivo de la O.E.G., el 10 de noviembre de 2006 emitimos una orden al Procurador General de Puerto Rico (Procurador) para que éste evaluara la alegada conducta del aquí querellado a la luz de los cánones de ética profesional. Así las cosas, el 4 de abril de 2007, el Procura *174 dor presentó una querella sobre conducta profesional contra el Ledo. Richard Rodríguez Vázquez. La querella presentada imputa al abogado una violación al Canon 38 del Código de Etica Profesional, supra.(10)
El 15 de noviembre de 2007 emitimos una Resolución para referir el caso a una Comisionada Especial (Comisionada). La Comisionada sometió su informe el 11 de agosto de 2008. Después de haber aquilatado la prueba, la Comisionada determinó que el querellado se apropió ilegalmente de parte del dinero sobrante. Además, concluyó que la actuación de éste constituyó una violación al Canon 38, supra.
En su defensa ante la Comisionada, el querellado señaló que la determinación que hizo la O.E.G. de que él se apropió del dinero sobrante de la actividad se fundamentó en el hecho de que él decidió no testificar en la vista ante el Oficial Examinador en cuanto al origen del dinero depositado. Sin embargo, aunque en la resolución de la O.E.G. ciertamente se comentó el silencio del aquí querellado, que incluso se utilizó para reforzar la evidencia presentada en esa instancia, se presentó prueba adicional, clara, robusta y convincente en apoyo de que se cometió la apropiación. Además, durante el procedimiento con la Comisionada, el querellado tuvo la oportunidad de controvertir el valor de la evidencia directa y circunstancial al sentarse a declarar, y decidió no hacerlo. Tal evidencia demuestra que el querellado abrió dos cuentas, en concierto y común acuerdo con otra persona, con el dinero que sobró de los fondos asignados por el Fondo, para una actividad *175 de los empleados unionados y que no le pertenecían, ni al señor del Valle Hernández.
El querellado no devolvió al fondo de Jaca Travel, Inc. o al fondo de la Unión la cantidad de mil quinientos dólares que, conforme a la determinación de la O.E.G. y de la totalidad de la prueba ante nuestra consideración, depositó en una cuenta personal e invirtió en gastos personales.(11)
Debidamente sometido el caso a nuestra consideración, procedemos a resolver.
II
A. Reiteradamente hemos establecido que todo asunto relacionado con la reglamentación del ejercicio de la abogacía es un poder inherente de este Tribunal.(12) Sin embargo, este poder no está supeditado al resultado de un proceso criminal.(13) Como secuela de lo anterior, hemos resuelto que los procedimientos disciplinarios ante este Tribunal son independientes de las acciones legales, ya sean criminales o civiles, que se deriven de la misma relación de hechos.(14)
En cuanto a la carga probatoria requerida en un proceso disciplinario, resolvimos que el criterio a utilizarse es el de la prueba clara, robusta, convincente y no afectada por reglas de exclusión ni a base de conjeturas.(15)
B. El Código de Ética Profesional establece las pautas mínimas que deben guiar a los abogados en la prác *176 tica de su profesión.(16) Por consiguiente, todo abogado debe actuar a un nivel superior y no al margen de éste.(17)
La naturaleza pública que reviste la práctica de la abogacía requiere una estricta observancia y reglamentación.(18) Como es sabido, distinto quizás a otras profesiones, la práctica de la abogacía conlleva una seria y delicada función ciudadana, pues representa servicio, ética y ejemplo.(19)
El Canon 38 del Código de Ética Profesional, supra, impone a los abogados la obligación de esforzarse por exaltar la dignidad y el honor de la profesión, y evitar la apariencia de conducta impropia. Este canon, en lo pertinente, dispone lo siguiente:
El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. ...
Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. ... 4 L.P.R.A. Ap. IX, C. 38.
De igual forma, hemos enfatizado reiteradamente que todo abogado habrá de desempeñarse con dignidad y alto sentido del honor, aunque ello implique ciertos sacrificios personales.(20) Además, deberá conducirse en forma digna y. honorable, tanto en la vida privada como en el desempeño de su profesión.(21)
*177 La responsabilidad moral y ética que rigen nuestra ilustre profesión, obliga a todo abogado a examinar su comportamiento continuamente. En ese contexto, hemos insistido en que los abogados son el espejo donde se refleja la imagen de la profesión. Por tal razón, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen.(22)
Del mismo modo, es doctrina firmemente establecida en nuestra jurisdicción que un abogado puede ser suspendido o desaforado por actuaciones que no necesariamente surjan de la actividad profesional; basta con que éstas afecten las cualidades morales del querellado o que lo hagan indigno de pertenecer al foro.(23)
C. En varias ocasiones hemos sostenido que un abogado que labore en el servicio público puede ser sancionado por actos que, además de ser violatorios del Código de Etica Profesional, también constituyan una violación a la Ley de Etica Gubernamental. Examinemos algunos de nuestros pronunciamientos.
En In re Silvagnoli Collazo, 154 D.P.R. 533 (2001), determinamos, entre otras cosas, que viola el deber de conducirse en forma digna y honorablemente, y el de evitar la apariencia de conducta profesional impropia aquel abogado que devengue ingresos de un municipio por servicios legales no prestados. En esa ocasión, suspendimos al licenciado por el periodo de tres meses por haber practicado activa y copiosamente la abogacía en horas laborables.
Por otro lado, en In re Quiñones Ayala, 165 D.P.R. 138 (2005), un abogado, quien entonces ocupaba un puesto de abogado a jornada completa en la División Legal de la Administración de Derecho al Trabajo, representó durante *178 horas laborables a un ciudadano particular ante los tribunales del país en asuntos no relacionados con sus deberes oficiales. El abogado cobró salarios y recibió beneficios indebidamente por unos servicios que, si bien eran su responsabilidad, nunca rindió.
Aunque el abogado incurrió en una conducta constitutiva de violación al Canon 38, éste aceptó su responsabilidad y sólo invirtió una cantidad reducida de horas laborables (9 horas). Por lo cual, aunque concluimos que las gestiones del abogado fueron patentemente contrarias a los postulados éticos que gobiernan la profesión y lesionaron la dignidad de su ministerio, éste sólo fue censurado. Ambos casos trataban de violaciones al Art. 3.2(c) de la Ley de Ética Gubernamental, supra, y al Canon 38 de Ética Profesional, supra.
Con este marco jurídico, analizamos la controversia ante nos.
III
A. En su defensa, el querellado menciona la determinación de “no causa” para arresto que se hiciera ante la presentación de cargos criminales por estos hechos y de la que el Ministerio Público no recurrió en alzada. También cuestiona que la prueba para demostrar la conducta imputada no fue clara, robusta y convincente. Sin embargo, ambas defensas no tienen méritos.
Como ya expresamos, es norma clara que el proceso disciplinario es independiente de cualquier acción legal que surja de los mismos hechos. Nuestro poder disciplinario no está subordinado al resultado de un proceso criminal. Además, evaluada la evidencia, surge de forma clara, robusta y convincente que el querellado incurrió en la conducta imputada. Veamos.
B. Al convertirse en abogado, el 13 de enero de 1992 el querellado se comprometió a cumplir con sus obligaciones *179 éticas como letrado, independientemente de las obligaciones que asumió como presidente de la Unión en 1996. Fue su decisión el no solicitar un ascenso como abogado en el Fondo, para el cual laboraba desde la década de 1970. Permaneció en una posición de oficinista, que le permitía ser oficial de la Unión y disfrutar de una licencia con sueldo.
Independientemente de esa decisión, cualquier conflicto que pudiera existir entre sus obligaciones éticas como presidente de la Unión y su profesión, debieron resolverse cumpliendo, en realidad y en apariencia, con los cánones de ética de la profesión que escogió y juró defender.
La prueba evaluada demuestra, sin lugar a dudas, que el querellado era el presidente de la Unión y, a la vez, intervenía en las decisiones relativas a la entidad que se creó, Jaca Travel, Inc. Dicha prueba establece el conocimiento y la participación del querellado en la actividad que origina este asunto.
Además, quedó claramente establecido que el querellado, varios días después de la actividad, abrió una cuenta personal junto a su compañero de trabajo, el señor Del Valle Hernández, por la cantidad de mil quinientos dólares cada cuenta. Ambos utilizaron el dinero para sus gastos personales. El dinero utilizado consistió en el sobrante de los fondos asignados por el Fondo para una actividad de los empleados unionados, y que claramente no pertenecía ni al querellado ni a su compañero.
Por tal razón resolvemos que, al así actuar, el licenciado Rodríguez Vázquez se apartó del deber de esforzarse, al máximo de su capacidad, en la exaltación del honor y la dignidad de su profesión. No cumplió, además, con el deber de evitar la apariencia de conducta impropia que exige el Canon 38 de Etica Profesional, supra.
Cuando un abogado comienza en el servicio público, debe regirse con la misma responsabilidad ética y moral que fundamentan su profesión. Actuar en violación a los principios éticos del servicio público pone en riesgo la esta *180 bilidad del fundamento moral del Estado y lesiona la confianza del pueblo en sus instituciones. Dichas actuaciones son motivos suficientes para que este Tribunal, en el ejercicio de su poder inherente de reglamentar la profesión, encamine un procedimiento disciplinario.
El querellado tiene la obligación de conducirse a tenor con los cánones de ética y tiene que velar por que sus actuaciones no den margen a la más leve sospecha de impropiedad. Por lo tanto, el querellado debió anticipar y evitar el conflicto de intereses que creó al así actuar, aun cuando haya sido de apariencia. Así se lo exige el cumplimiento con el Canon 38.
C. Reiteramos la norma establecida por este Tribunal, en la que sostenemos que un abogado que labore en el servicio público puede ser sancionado por actos que, además de que violen el Código de Etica Profesional, también constituyan una violación a la Ley de Etica Gubernamental.(24) Extendemos dicha norma, al caso ante nos, donde los hechos que dieron lugar al procedimiento disciplinario no surgen por causas relacionadas con el ejercicio de su profesión. Sin embargo, hemos resuelto que el Código de Ética Profesional aplica aun en los casos de letrados que no estuviesen realizando funciones como abogados.(25) El querellado, al ser abogado, debió regirse por los cánones de ética profesional, aunque no estuviese practicando la profesión. Más aún, cuando su conducta trastoca la función primordial del abogado en servir a la sociedad y lacera la honrosa práctica del servicio público.
IV
Hemos expresado que, al determinar la sanción disciplinaria que aplique al abogado querellado, podemos *181 tomar en cuenta varios factores. Entre éstos se encuentran la reputación del abogado en su comunidad, su historial previo, si es su primera falta, la aceptación de la falta y su sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, el resarcimiento al cliente y cualesquiera otras consideraciones —ya bien atenuantes o agravantes— que medien de acuerdo con los hechos.(26)
En este caso reconocemos como atenuantes que el licenciado Rodríguez Vázquez pagó una multa administrativa ascendente a cuatro mil quinientos dólares a la O.E.G. y que es su primera falta ética. Sin embargo, el querellado nunca devolvió el dinero apropiado ilegalmente, aunque la prueba demuestra que nunca se le ha cobrado ni ha expresado un genuino arrepentimiento por sus actuaciones.
No obstante, la conducta altamente censurable del querellado relatada, nos obliga a tomar medidas disciplinarias contra él. Estimamos que el licenciado Rodríguez Vázquez debe responder por sus actuaciones. Procede, como sanción disciplinaria, tres meses de suspensión del ejercicio de la abogacía, efectivo a partir de su notificación. Le apercibimos para que en el futuro se ciña estrictamente a las disposiciones de los cánones de ética profesional; de lo contrario, seremos más rigurosos.

El Alguacil de este Tribunal deberá incautarse de la obra y del sello notarial del abogado suspendido y deberá entregarlos a la Directora de la Oficina de Inspección de Notarías. El Tribunal, además, impone al Ledo. Richard Rodríguez Vázquez el deber de notificar a todos sus clientes de su presente inhabilidad para seguir representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Además, deberá certificarnos, dentro del término de treinta 
*182
días, contados a partir de la notificación de esta opinión “per curiam”, el cumplimiento de estos deberes notificando también al Procurador General.

Se dictará Sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez y la Juez Asociada Señora Rodríguez Rodríguez no intervinieron.

 El Art. 3.2(a) dispone: “Ningún funcionario o empleado público desacatará, ya sea personalmente o actuando como servidor público, las leyes en vigor ni las citaciones u órdenes de los Tribunales de Justicia, de la Rama Legislativa o de las agencias de la Rama Ejecutiva que tengan autoridad para ello.” 3 L.P.R.A. see. 1822(a).

 Delegado de la Unión de Empleados del Fondo del Seguro del Estado (Unión) y protagonista de los hechos que hoy evaluamos. El Senado de Puerto Rico le concedió inmunidad criminal y administrativa.

 El querellado fue objeto de un procedimiento criminal de causa probable para arresto (Regla 6 de Procedimiento Criminal, 34 L.P.R.A. Ap. II) sobre estos mismos hechos y se determinó “no causa”. El Ministerio Público no fue en alzada.

 3 L.P.R.A. sec. 1822(a), (c) y (h).

 Resolución de 21 de octubre de 2002 de la Oficina de Ética Gubernamental, O.E.G. v. Richard Rodríguez Vázquez, caso Núm. 02-16. En esta Resolución se citaron como fundamentos la jurisprudencia de este Tribunal: Negrón Soto v. Gobernador, 110 D.P.R. 664 (1981); Zavala Vázquez v. Mun. de Ponce, 139 D.P.R. 548, 553 (1995), eln re Corona Muñoz I, 141 D.P.R. 640, 642 (1996). Estos casos sostienen que las licencias laborales no desvinculan al empleado de la naturaleza de su empleo.

 Resolución de 21 de octubre de 2002 de la Oficina de Ética Gubernamental, OEG v. Richard Rodríguez Vázquez, Caso Núm. 02-16.

 Véase el esc. 1.

 La resolución señala lo siguiente: “Los principios contenidos en el Artículo 6(A)(6), (D) y (E) del Reglamento de Ética Gubernamental violados por el querellado se encuentran subsumidos en la disposición estatutaria del Artículo 3.2(a) de la Ley. Por lo cual, en el ejercicio de nuestra discreción, imponemos una sola multa por violación al Artículo 3.2(a).” Resolución de la O.E.G., pág. 18 esc. 14.

 Mediante Sentencia de 11 de febrero de 2005, determinamos que el Tribunal de Apelaciones carecía de jurisdicción para entender el asunto.

 El Procurador General alega en este cargo que:
“El Ledo. Richard Rodríguez Vázquez incurrió en conducta en violación al Canon 38 de los de Etica Profesional, 4 L.P.R.A. Ap. IX, C. 38, el cual dispone, entre otras cosas, que el abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. Dicho Canon también establece que, por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en fot'ma digna y honorable.” (Enfasis suplido.) Querella, pág. 1.

 Ciertamente, ni la Oficina de Ética Gubernamental (O.E.G.) ni la Unión requirieron a éste que devolviera el dinero.

 In re Deynes Soto, 164 D.P.R. 327, 334 (2005); In re Peña Peña, 153 D.P.R. 642, 649 (2001).

 In re Deynes Soto, supra, pág. 335; In re Soto López, 135 D.P.R. 642, 646 (1994).

 In re Deynes Soto, supra; In re Peña Peña, supra, pág. 650.

 In re Caratini Alvarado, 153 D.P.R. 575 (2001).

 In re Nogueras Cartagena, 150 D.P.R. 667, 674 (2000); In re Filardi Guzmán, 144 D.P.R. 710 (1998).

 In re Nogueras Cartagena, supra.

 In re Quiñones Ayala, 165 D.P.R. 138, 144 (2005); In re Negrón Negrón, 163 D.P.R. 586 (2004); In re Pérez Rodríguez, 115 D.P.R. 810, 811 (1984).

 In re Quiñones Ayala, supra; In re Cuyar Fernández, 163 D.P.R. 113, 117 (2004).

 In re Silvagnoli Collazo, 154 D.P.R. 533 (2001); In re Colón Ramery, 133 D.P.R. 555, 562 (1993); In re Roldán Figueroa, 106 D.P.R. 4, 12 (1977).

 In re Silvagnoli Collazo, supra; In re Irizarry, González, González Rucci, 151 D.P.R. 916 (2000).

 In re Quiñones Ayala, supra; In re Cuyar Fernández, supra; In re Cintrón Colón, 161 D.P.R. 778 (2004); In re Silvagnoli Collazo, supra; In re Ortiz Brunet, 152 D.P.R. 542 (2000); In re Coll Pujols, 102 D.P.R. 313, 319 (1974).

 Colegio de Abogados de P.R. v. Barney, 109 D.P.R. 845, 848 (1980); In re Liceaga, 82 D.P.R. 252, 255-256 (1961).

 Véanse: In re Silvagnoli Collazo, supra; In re Quiñones Ayala, supra.

 In re Deynes Soto, supra.

 In re Díaz Ortiz, 150 D.P.R. 418, 427 (2000); In re Arroyo Rivera, 148 D.P.R. 354 (1999).