EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:

Luis Huertas Soto | 2016 TSPR 58

195 DPR ____ |

Número del Caso: CP-2012-2


Fecha: 29 de marzo de 2016

 Oficina de la Procuradora General:

         Lcda. Tatiana Grajales Torruellas
         Subprocuradora General

         Lcda. Yaisamarie Lugo Fontanez
         Procuradora General Auxiliar

Materia: Conducta Profesional – La suspensión será efectiva el 4 de abril de 2016, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Luis Huertas Soto                    CP-2012-2

*PER CURIAM*

En San Juan, Puerto Rico, a 29 de marzo de 2016.

En esta ocasión debemos sancionar a un abogado por incurrir en conducta impropia y faltar al deber de esforzarse al máximo de su capacidad por exaltar el honor y la dignidad de la profesión. Ello, en contravención del Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Veamos los hechos y el tracto procesal de este caso.

I.

El origen de esta querella se remonta a mayo de 2003, cuando varias compañías aseguradoras[1]

---

[1] Estas son: Puerto Rican American Insurance Company, National Insurance Company, Universal Insurance Company, Caribbean Alliance Insurance Company, Integrand Assurance Company, Cooperativa de Seguros Múltiples y la Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio.

presentaron una queja en la Oficina de la Procuradora General en contra del Lcdo. Rafael Rivera Vázquez y del Lcdo. Luis E. Huertas Soto (el querellado).[2] Las aseguradoras alegaron que el licenciado Rivera Vázquez y el querellado, como parte de un esquema de fraude, representaron a clientes en varias reclamaciones falsas basadas en supuestos accidentes de tránsito. Como resultado de dichas reclamaciones, las aseguradoras emitieron cheques en concepto de indemnización, cantidad que totalizó $947,911.90. Además, las aseguradoras indicaron que advinieron en conocimiento de estos hechos en el curso de unas investigaciones anteriores y concurrentes a la presentación de una demanda contra el licenciado Rivera Vázquez y el querellado, entre otros, ante la Corte Federal de Distrito para el Distrito de Puerto Rico (Tribunal Federal), al amparo de la legislación *Racketeer Influenced and Corrupt Organization Act* (RICO) y en la cual solicitaron la devolución de los fondos desembolsados.[3]

Previendo la posibilidad de que estos hechos implicaran la comisión de delitos, la Oficina de la Procuradora General refirió la queja a la Oficina del Fiscal General. Sin embargo, posteriormente la Oficina del Fiscal General cerró la investigación y no inició

---

[2] El querellado fue admitido a la abogacía el 13 de agosto de 1986 y a la notaría el 28 de agosto del mismo año.
[3] Puerto Rico American Insurance Company, *et al*. v. Carlos Burgos, *et al.*, Civil Núm. 01-1186.

procedimiento criminal alguno.[4] No surge que durante esta etapa la Oficina de la Procuradora General realizara algún trámite con relación a la queja contra el querellado.

Por su parte, el 12 de junio de 2008 el Tribunal Federal dictó sentencia en el caso de Puerto Rico American Insurance Company, et al. v. Carlos Burgos, et al., Civil Núm. 01-1186, y determinó que el licenciado Rivera Vázquez y el querellado participaron en un esquema de fraude en violación al RICO, en el cual presentaron, en conjunto e individualmente, veintidós reclamaciones falsas a varias compañías aseguradoras. En consecuencia, el Tribunal Federal condenó al querellado a pagar a las aseguradoras la cantidad de $1,440,802.86. Esta sentencia es final y firme.

De otro lado, el Director Ejecutivo de la Administración de Compensaciones por Accidente de Automóviles (ACCA), basándose en las determinaciones de hechos de la mencionada sentencia, refirió un informe para investigación a la Oficina del Fiscal General. Esta Oficina, sin embargo, concluyó que cualquier delito que pudiera surgir de los hechos se encontraba prescrito. Por ello, refirió el asunto nuevamente a la Oficina de la Procuradora General para que considerara si, como

---

[4] No obstante, en relación con los hechos relatados en la queja de las aseguradoras, se presentó una acusación criminal en el Tribunal Federal contra el licenciado Rivera Vázquez. En mayo de 2006, el licenciado Rivera Vázquez hizo alegación de culpabilidad por el delito de conspiración para defraudar al servicio postal y fue condenado a doce meses de prisión y tres años de libertad bajo supervisión electrónica. En consecuencia, el 16 de junio 2006 se le suspendió de la abogacía y notaría. In re Rivera Vázquez, 168 DPR 168 (2006).

resultado de estos sucesos, el querellado violó alguna disposición de los Cánones de Ética Profesional, supra.[5]

Durante el proceso de investigación, la Oficina de la Procuradora General advino en poder de una declaración jurada de 15 de febrero de 2006 en la cual el querellado, de su puño y letra, admitía haber conocido que las reclamaciones a las aseguradoras eran fraudulentas y que, aun así, siguió aceptando esos casos:

> Para finales del año 1997, confronto a Rivera Vázquez sobre mi sospecha y éste me admite que Iván Cabrera creaba estos casos lo que significaba que algún fraude se estaba cometiendo. En respuesta de mi señalamiento el Lcdo. Rivera me admite que ese acto de fraude era problema de Iván Cabrera y no de él y mío. A pesar de ello continúe [sic] aceptando los casos referidos por el Lcdo. Rivera.[6]

Así, luego de otros trámites, la Procuradora General presentó un Informe ante este Tribunal en el que recomendó la presentación de una querella por violación al Canon 38 de Ética Profesional, supra. El querellado replicó y basó su defensa, fundamentalmente, en que aunque presentó las reclamaciones y cobró los cheques, ignoraba que se tratara de reclamaciones fraudulentas.[7]

Examinados el Informe y su réplica, le ordenamos a la Oficina de la Procuradora General que procediera a presentar la querella. Así, en cumplimiento con nuestra

---

[5] La Oficina del Fiscal General también remitió al Procurador General copia de la sentencia del Tribunal Federal.

[6] Apéndice, págs. 300-301.

[7] Contestación a la querella presentada por la Procuradora General, pág. 3. En efecto, con relación a estos hechos al querellado no le presentaron cargos criminales.

orden, la Procuradora General le imputó al querellado el siguiente cargo:

> El licenciado Luis Huertas Soto violó los preceptos del Canon 38 de Ética Profesional, el cual establece que los abogados deben esforzarse al máximo en la exaltación del honor y la dignidad de la profesión y debe evitar hasta la apariencia de conducta impropia y obliga a denunciar valientemente ante el foro correspondiente cualquier conducta impropia de cualquier colega.[8]

Después de que el querellado contestara la querella, nombramos a la Hon. Crisanta González Seda, ex jueza del Tribunal de Primera Instancia, como Comisionada Especial para recibir la prueba y rendirnos un informe con las determinaciones de hechos y recomendaciones que estimara pertinentes. El 12 de diciembre de 2013 se celebró la vista final ante la Comisionada Especial, en la cual únicamente testificó el querellado. La Procuradora General, por su parte, dio el caso por sometido a base de la prueba documental que obra en el expediente. Después de otros trámites, la Comisionada Especial entregó su *Informe*, en el que concluyó que:

> Las actuaciones del querellado en su desempeño como abogado, encubriendo y participando en lo que tenía que saber, que eran actos delictivos, y en este procedimiento, tratando de evadir su responsabilidad y expresando que no quería denunciar al licenciado Rivera Vázquez crean la apariencia de una conducta impropia, no importa cuáles pudieran ser sus justificaciones para ello.[9]

---

[8] Querella, pág. 3.
[9] Informe de la Comisionada Especial, págs. 25-26.

Con respecto al trasfondo de los hechos que dieron lugar a la queja, la Comisionada Especial determinó que para el año 1995 el querellado arrendó un espacio de oficina dentro del despacho del licenciado Rivera Vázquez, de quien se convirtió en compañero de oficina.[10] Eventualmente, el licenciado Rivera Vázquez comenzó a referirle casos sobre accidentes de tránsito ficticios, en los cuales el querellado presentó la reclamación a las aseguradoras y tramitó el pago de la indemnización.[11] Así, desde el 1997 hasta el 2001 el licenciado Rivera Vázquez y el querellado instaron un total de veintidós reclamaciones falsas.[12]

Por su parte, el querellado replicó al *Informe* de la Comisionada Especial y reiteró que desconocía la falsedad de las reclamaciones. Con respecto a su declaración jurada, adujo que ésta la prestó de forma involuntaria, ante la amenaza de que le radicaran cargos criminales y sin la oportunidad de contar con un abogado. Por ello, sostuvo que la declaración debía ser excluida por haber

---

[10] Además del querellado y el licenciado Rivera Vázquez, el despacho lo compartían otros dos abogados.

[11] A su vez, según determinó la Comisionada Especial, el Sr. Iván Cabrera Garay se encargaba de traer a la oficina los casos en que se basaban las reclamaciones falsas.

[12] Asimismo, los documentos que apoyaban estas reclamaciones, tales como los partes médicos y la querella policial, no eran auténticos. De otra parte, en el caso del querellado, éste cobraba en concepto de honorarios de abogado el 15% de lo pagado por las aseguradoras. *Informe* de la Comisionada Especial, pág. 13.

sido prestada en violación a su derecho contra la autoincriminación.[13]

Con el beneficio del *Informe* de la Comisionada Especial, la réplica, así como los demás documentos y la prueba que se encuentra en el expediente, procedemos a resolver.

## II.

Anteriormente hemos expresado que "[e]l día en que un abogado presta juramento ante el Tribunal Supremo le es concedido un gran privilegio: el de poder ejercer una profesión, honrosa por demás, que tiene una rica y extraordinaria tradición y que desempeña un importante papel en nuestra sociedad". In re: Quintero Alfaro, 161 DPR 871 (2004). Así, al juramentar el abogado se convierte en un funcionario del Tribunal y se compromete a desempeñar su función con la mayor competencia, compromiso e integridad. In re: Quintero Alfaro, supra; Ramos Acevedo v. Tribunal Superior, 133 DPR 599, 613-14 (1993).

El privilegio de desempeñar esta profesión no está exento de responsabilidades, entre ellas la de cumplir fielmente con los deberes que impone el Código de Ética Profesional, supra. El objetivo de este Código es propiciar que los abogados se desempeñen, profesional y personalmente, acorde con los más elevados principios de conducta. Ello para beneficio de la ciudadanía, las

---

[13] *Comentarios, objeciones y recomendaciones sobre Informe de la Comisionada Especial*, págs. 1-5.

instituciones de justicia y la profesión jurídica. In re Pujol Thompson, 171 DPR 683 (2007); In re: Izquierdo Stella, 154 DPR 732 (2001).

Asimismo, hemos aclarado que el fin del procedimiento disciplinario no es castigar al abogado, sino proteger al público y a la profesión mediante una investigación del comportamiento ético del abogado y de sus condiciones morales. In re Olivera Mariani, 173 DPR 498 (2008); In re: Liceaga, 82 DPR 252 (1961).

En particular, nos corresponde considerar -por ser el cargo imputado en la querella de autos- el Canon 38 del Código de Ética Profesional, supra. En lo pertinente, éste dispone que:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de la profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. Tal participación conlleva necesariamente asumir posiciones que puedan resultarle personalmente desagradables pero que redundan en beneficio de la profesión, tales como: denunciar valientemente, ante el foro correspondiente, todo tipo de conducta corrupta y deshonrosa de cualquier colega o funcionario judicial [...].

De conformidad con los propósitos y fundamentos del Código de Ética Profesional, supra, hemos dicho sobre el Canon 38 que "[i]nfringirlo resulta nocivo al respeto que la ciudadanía deposita en las instituciones de justicia y

la confianza que los clientes depositan en los abogados". In re: Manuel Acevedo Hernández, 2015 TSPR 167, 193 DPR ___; In re: Santiago Tirado, 173 DPR 786, 794 (2008).

De otra parte, en vista de que los procedimientos disciplinarios pueden tener el efecto de incidir sobre la licencia de un abogado o notario a ejercer su profesión y generar los medios económicos para sustentarse, establecimos que el estándar de prueba para hallar a un abogado incurso en una violación ética es el de "prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas". In re: Rodríguez Mercado, 165 DPR 630, 640 (2005). Al respecto, hemos dicho que prueba clara, robusta y convincente es "aquella evidencia que produce en el juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables". In re: Martínez Almodóvar, 180 DPR 805, 820 (2011).

III.

El Tribunal Federal, el cual no tuvo ante sí la declaración jurada en la que el querellado admitió haber tenido conocimiento de la falsedad de las reclamaciones, dictó una sentencia sumaria y determinó que el querellado, entre otras personas, participó en un esquema fraudulento bajo el cual presentó varias reclamaciones falsas a compañías aseguradoras. Al dictar esta sentencia -la cual es final y firme, y por lo tanto tiene una presunción de

corrección- el Tribunal Federal contó con una declaración de hechos incontrovertidos, apoyada en prueba documental, que el querellado no pudo controvertir.

Por su parte, el querellado admite que las reclamaciones eran falsas, pero sostiene que en aquel momento él no tuvo conocimiento de dicha falsedad. Sin embargo, aún considerando esa alegación para fines de nuestro análisis, basta con examinar la declaración de hechos incontrovertidos presentada por los demandantes en el caso federal, así como la prueba documental incluida el expediente, para percatarse de que en varias de las reclamaciones en que el querellado participó como abogado se repetían las mismas personas involucradas en los supuestos accidentes de tránsito.[14]

Según nos parece, tan inusitada coincidencia es suficiente para alarmar el conocimiento y despertar la suspicacia en un abogado promedio. En consecuencia, concluimos que la sentencia del Tribunal Federal y la prueba documental a la que hemos hecho referencia evidencian que el querellado no se esforzó al máximo de su capacidad en la exaltación del honor y la dignidad de la profesión.

Más aún, en autos consta la declaración jurada de 15 de febrero de 2006, en la que el querellado declara:

---

[14] Apéndice, págs. 44-67. Ello sin tomar en cuenta las personas que se repetían en las reclamaciones en las que participó el licenciado Rivera Vázquez, quien en ocasiones laboró en conjunto con el querellado.

> Para finales del año 1997, confronto a Rivera Vázquez sobre mi sospecha y éste me admite que Iván Cabrera creaba estos casos lo que significaba que algún fraude se estaba cometiendo. En respuesta de mi señalamiento el Lcdo. Rivera me admite que ese acto de fraude era problema de Iván Cabrera y no de él y mío. A pesar de ello continué [sic] aceptando los casos referidos por el Lcdo. Rivera.[15]

El querellado alega que esta declaración fue prestada involuntariamente ante dos agentes federales que se la pidieron para reforzar la acusación contra el licenciado Rivera Vázquez; que fue dada bajo la amenaza de que si no cooperaba someterían su participación en los hechos ante la consideración de un gran jurado; que no se le permitió tener presente a un abogado; que no se le permitió ir al baño ni tomar agua por más de dos horas; que la declaración fue hecha en violación a su derecho contra la autoincriminación y que por lo tanto debe ser excluida.[16]

Con respecto a lo anterior, entre otras consideraciones: primero, según lo determinó la Comisionada Especial, el querellado fue citado y acudió voluntariamente a la reunión con el inspector de correos y el otro agente; segundo, el querellado decidió no guardar silencio ni marcharse del lugar, sabiendo, como abogado que es, que tenía derecho a ello; tercero, el querellado no fue arrestado ni citado ante un gran jurado antes ni después de prestar la declaración; cuarto, nada en el expediente apunta a indicios que arrojen dudas sobre la

---

[15] Apéndice, págs. 300-301.
[16] *Contestación a querella*, págs. 10-13.

validez de la declaración jurada. Por último, aún asumiendo para propósitos de nuestro análisis que el querellado era un sospechoso que se encontraba detenido y ante un interrogatorio en el que no se observaron las garantías contra la autoincriminación, para efectos de este procedimiento disciplinario no aplicaría la regla de exclusión pues el querellado no está expuesto a condena o procesamiento criminal alguno. Ernesto L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Editorial Forum, 1991, Vol. I, §3.3, págs. 120-122.

Tomando en cuenta todo lo anterior, resolvemos que el querellado incurrió en conducta impropia al presentar reclamaciones para indemnización aún luego de conocer que se trataba de casos falsos dentro de un esquema de fraude.[17] Asimismo, el querellado incurrió en conducta impropia al no denunciar la conducta corrupta y deshonrosa del licenciado Rivera Vázquez al procurarse reclamaciones fraudulentas y participar en el esquema de fraude.[18] Por lo tanto, al aplicar el estándar correspondiente de prueba clara, robusta y convincente, es ineludible concluir que

---

[17] Según consta en el expediente, luego del 1997 el querellado instó otras reclamaciones que fueron declaradas fraudulentas. Apéndice, págs. 44-67; 68-97.

[18] A diferencia de la Comisionada Especial, quien concluyó que el querellado incurrió en la apariencia de conducta impropia, resolvemos que el querellado, al proceder de la forma en que lo hizo, contravino exigencias específicas del Canon 38, supra, por lo que incurrió en conducta impropia como tal. "[E]ste Tribunal no está obligado a aceptar la recomendación del informe de la Comisionada Especial, ya que podemos adoptarlo, modificarlo o rechazarlo". In re: Pietri Castellón, 185 DPR 982, 995 (2012); In re: Miguel Hernández Vázquez, 180 DPR 527 (2010).

el querellado actuó contrario a las disposiciones del Canon 38 del Código de Ética Profesional, supra, y que, por lo tanto, incurrió en conducta antiética.[19]

IV.

Por los fundamentos expuestos, se suspende inmediata e indefinidamente al querellado del ejercicio de la abogacía y notaría. Le imponemos el deber de notificar a todos sus clientes de su inhabilidad para seguir representándolos, devolver cualesquiera honorarios recibidos por trabajos no realizados e informar de su suspensión a los foros judiciales y administrativos del país. Deberá certificarnos, dentro del término de treinta días contados a partir de la notificación de esta Opinión *Per Curiam* y Sentencia, el cumplimiento de estos deberes y notificar también de ello a la Procuradora General.

La Oficina del Alguacil de este Tribunal procederá a incautar el sello y la obra notarial del querellado, y los entregará a la Oficina de Inspección de Notarías (ODIN) para su examen e informe a este Tribunal.

---

[19] Al determinar la sanción disciplinaria a imponerle a un abogado por conducta antiética, pueden tomarse en consideración los siguientes factores: la buena reputación del abogado en la comunidad; su historial disciplinario; si ninguna parte resultó perjudicada por su conducta; la aceptación de la falta y su sincero arrepentimiento; el ánimo de lucro que medió en su actuación; el resarcimiento al cliente; y cualesquiera otras consideraciones, ya sean atenuantes o agravantes, que resulten pertinentes. In re Quiñones Ayala, 165 DPR 138 (2005); In re Montalvo Guzmán, 164 DPR ____ (2005). Como atenuantes, el querellado señaló el hecho de no haber tenido otras querellas disciplinarias y, además, expresó arrepentimiento por haberse relacionado con las personas que participaron en el esquema de fraude. También presentó una declaración jurada del Lcdo. Demetrio Fernández, con respecto al buen comportamiento ético con el que se desempeñó el querellado en un caso de sucesiones que ambos litigaron. *Informe* de la Comisionada Especial, pág. 27.

Notifíquese personalmente esta Opinión *Per Curiam* al Lcdo. Luis E. Huertas Soto por la Oficina del Alguacil de este Tribunal. Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Luis Huertas Soto                    CP-2012-2


SENTENCIA

En San Juan, Puerto Rico, a 29 de marzo de 2016.

Por los fundamentos expuestos, se suspende inmediata e indefinidamente al querellado del ejercicio de la abogacía y notaría. Le imponemos el deber de notificar a todos sus clientes de su inhabilidad para seguir representándolos, devolver cualesquiera honorarios recibidos por trabajos no realizados e informar de su suspensión a los foros judiciales y administrativos del país. Deberá certificarnos, dentro del término de treinta (30) días contados a partir de la notificación de esta Opinión *Per Curiam* y Sentencia, el cumplimiento de estos deberes y notificar también de ello a la Procuradora General.

La Oficina del Alguacil de este Tribunal procederá a incautar el sello y la obra notarial del querellado, y los entregará a la Oficina de Inspección de Notarías (ODIN) para su examen e informe a este Tribunal.

Notifíquese personalmente esta Opinión *Per Curiam* al Lcdo. Luis E. Huertas Soto por la Oficina del Alguacil de este Tribunal.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo.  La Jueza Asociada señora Pabón Charneco concurre sin opinión escrita.


                              Juan Ernesto Dávila Rivera
                          Secretario del Tribunal Supremo